CORNELIA G. KENNEDY, Circuit Judge.
 

 This is an appeal from the District Court’s affirmance of the Bankruptcy
 
 *1137
 
 Court’s dismissal of appellant’s Chapter 11 petition. Winshall Settlor’s Trust (hereinafter referred to as the Trust) was created in 1960, from which time it operated (the Civil Center Garage located at 440 East Congress in Detroit, Michigan. In 1980, it obtained a $300,000 mortgage loan from City National Bank to pay off two outstanding mortgages and renovate the building’s structure. In 1981, it entered into a land contract for the sale of the garage. In 1982, following the default of the vendees to the land contract, the trust defaulted on its mortgage payments. There followed a foreclosure and after expiration of the Trust’s right of redemption in 1983 a sale of the property. The Trust then filed a petition for protection under Chapter 11, allegedly for the purpose of setting aside the foreclosure as a voidable transfer pursuant to 11 U.S.C. § 548(a)(2)(A). The Bankruptcy Court dismissed the petition on the grounds that the debtor had failed to prove that it was a business trust and hence was not entitled to be a debtor under 11 U.S.C. § 109(d), and for the further reason that there was no res or business being conducted at the time of filing. After denial of the Trust’s motion for rehearing, appeal was taken to the District Court, which found that the Trust
 
 was
 
 a qualified debtor under § 109(d), but upheld the dismissal on the ground that Chapter 11 was not intended to be available to entities that had neither assets nor an ongoing business to protect. The trust filed a motion for rehearing or in the alternative amendment of the judgment to allow it to convert to a Chapter 7 liquidation proceeding. Upon denial of this motion, the Trust appealed.
 

 The purpose of Chapter 11 reorganization is to assist financially distressed business enterprises by providing them, with breathing space in which to return to a viable state.
 
 See In re Dolton Lodge Trust No. 35188,
 
 22 B.R. 918, 922 (Bankr.N.D.Ill.1982). “[I]f there is not a potentially viable' business in place worthy of protection and rehabilitation, the Chapter 11 effort has lost its
 
 raison
 
 d’etre....”
 
 In re Ironsides, Inc.,
 
 34 B.R. 337, 339 (Bankr.W.D.Ky.1983). Although appellant contends that there is no explicit “ongoing business” requirement to Chapter 11 reorganization, such a requirement is inherent in the stat-üte and clearly implied in 11 U.S.C. §;1112(b). That section permits the court alter notice and hearing to “convert a case under this chapter to a case under chapter 7 ... or ... dismiss a case under this chapter, ... for cause, including— ... (2) inability to effectuate a plan....” To be confirmed, a plan must “provide adequate means for the plan’s execution,” 11 U.S.C. § 1123(a)(5), which necessarily requires some means by which the debtor may repay its debts. More generally, an implicit prerequisite to the right to file is “good faith” on the part of the debtor, the absence of which may constitute cause for dismissal under § 1112(b).
 
 See Dolton Lodge,
 
 22 B.R. at 922. Factors relevant in examining whether a Chapter 11 petition has been filed in good faith include whether the debtor had any assets, whether the debtor had an ongoing business to reorganize, and whether there was a reasonable probability of a plan being proposed and confirmed.
 
 Id.
 
 at 923;
 
 see In re Eden Associates,
 
 13 B.R. 578, 585 (Bankr.S.D.N.Y.1981) (“The debtor, with no assets, no bona fide creditors and no business, cannot effectively rehabilitate its enterprise....”);
 
 see also In re Tinkoff,
 
 141 F.2d 731 (7th Cir.1944) (mortgage foreclosure proceedings in state court were valid and equity of redemption expired; debtor had no interest in property for which it sought to provide arrangement and dismissal of petition was proper). Dismissal of the Trust’s Chapter 11 petition on the grounds stated by the District Court was proper.
 

 Nor did the District Court err in refusing to amend its judgment to permit the Trust to convert its petition to one under Chapter 7. The court has the option, in the-best interests of the creditors, either to convert or dismiss under § 1112(b). The only significant assets of the Trust are contingent — a chose in action against the vendee in breach on the land contract, and the possibility of setting aside the foreclosure sale as a fraudulent conveyance.
 
 *1138
 
 With respect to the breach of contract suit, dismissal does not impair the rights of the Trust’s unsecured creditors, and since it has no other assets to distribute, conversion to Chapter 7 would be futile. Similar reasoning was applied by the court in
 
 In re Oak Winds,
 
 4 B.R. 528 (Bankr.M.D.Fla.1980), in overruling a creditor’s objection to dismissal of an involuntary Chapter 11 petition. The court concluded,
 

 nor would it serve any useful purpose to consider a conversion of this case into a liquidating case under Chapter 7 simply because there are no free assets which could be liquidated for the benefit of the general unsecured creditors_ Moreover, [their] rights are not impaired by this conclusion at all ... since the debtor is already asserting whatever claim it has against Oak Winds in now pending state court litigation and its position could in no say [sic] be enhanced by maintaining this proceeding in this Court under any chapter of the Code. [4 B.R. at 531]
 

 The Trust does contend, however, that it would be in a better position in bankruptcy court than it would be in state court (and thereby unsatisfied creditors as well as the Trust’s beneficiaries would be better off) with respect to setting aside the foreclosure sale.
 
 [1]
 
 The garage was sold for $400,-000. The Trust contends its value was between $1 and 1.8 million. Although petitioner concedes that it could not succeed in having the sale set aside in state court,
 
 [2]
 
 it contended that under 11 U.S.C. § 548(a)(2)(A) the sale was for less than “reasonably equivalent value” as a matter of law (presuming its alleged valuation of the property is accurate) and could be set aside. The District Court expressed doubt that bankruptcy law would alter the state law of fraudulent conveyances under these circumstances, and its instinct was correct.
 

 In
 
 Durrett v. Washington National Insurance Co.,
 
 621 F.2d 201 (5th Cir.1980), on which the Trust relies, the court held that a foreclosure sale was a “transfer of an interest of the debtor” for purposes of § 548; and that a sale of property for 57.7% of its fair market value was not “fair equivalence” as a matter of law. 621 F.2d at 203-04;
 
 see also Abramson v. Lakewood Bank & Trust Co.,
 
 647 F.2d 547 (5th Cir.),
 
 cert. denied,
 
 454 U.S. 1164, 102 S.Ct. 1038, 71 L.Ed.2d 320 (1981);
 
 In re Richardson,
 
 23 B.R. 434, 444-48 (Bankr.Utah 1982). That decision, however, has come under heavy criticism on both points, and justifiably so.
 

 In holding that a foreclosure sale was a transfer, the
 
 Durrett
 
 court relied on the broad definition set out in 11 U.S.C. § 1(30) of the old Bankruptcy Act. The court in
 
 In re Madrid,
 
 725 F.2d 1197 (9th Cir.),
 
 cert. denied,
 
 — U.S. —, 105 S.Ct. 125, 83 L.Ed.2d 66 (1984), rejected that view, reasoning that the proper definition to apply was that in § 548(d)(1),
 
 [3]
 
 by which the
 
 *1139
 
 “transfer” with respect to the debtor would occur when the mortgage was perfected rather than when the foreclosure sale occurred.
 
 Accord In re William,
 
 39 B.R. 678, 680 (D.Minn.1984);
 
 In re Strauser,
 
 40 B.R. 868, 870-71 (Bankr.N.D.Ohio 1984);
 
 see also Abramson,
 
 647 F.2d at 549-50 (Clark, J., dissenting);
 
 In re Alsop,
 
 14 B.R. 982, 986 (Bankr.Alaska 1981),
 
 aff'd
 
 22 B.R. 1017 (D.Alaska 1982).
 

 Even if the sale in question were a transfer subject to § 548, the better view is that reasonable equivalence for the purposes of a foreclosure sale under § 548(a)(2)(A) should be consonant with the state law of fraudulent conveyances. The Bankruptcy Appellate Panel in
 
 In re Madrid,
 
 21 B.R. 424 (Bankr. 9th Cir.1982),
 
 aff'd on other grounds,
 
 725 F.2d 1197 (9th Cir.),
 
 cert. denied,
 
 — U.S. —, 105 S.Ct. 125, 83 L.Ed.2d 66 (1984), noting the well-nigh universal rule that mere inadequacy of price alone does not justify setting aside an execution sale and that generally there must be in addition proof of some element of fraud, unfairness, or oppression accounting for the inadequacy in price, concluded that following the
 
 Durrett
 
 holding would radically alter these rules. 21 B.R. at 427;
 
 accord William,
 
 39 B.R., at 680-81;
 
 Strauser,
 
 40 B.R. at 870;
 
 [4]
 

 see also
 
 Note,
 
 Regularly Conducted Non-Collusive Mortgage Foreclosure Sales: Inapplicability of Section 548(a)(2) of the Bankruptcy Code,
 
 52 Fordham L.Rev. 261, 271-77, 280-81 (1983).
 

 “The cloud created over mortgages and trust deeds by making foreclosure sales subject to being voided by a bankruptcy trustee will naturally inhibit a purchaser other than the mortgagee from buying at foreclosure. This tends to depress further the prices of foreclosure sales and thus increase the potential size of the deficiency in each foreclosure....”
 
 Abramson,
 
 647 F.2d at 550 (Clark, J., dissenting);
 
 see also Madrid,
 
 725 F.2d at 1202;
 
 In re Alsop,
 
 14
 
 *1140
 
 B.R. at 987-88; Note,
 
 supra,
 
 at 278-80. “No support for this drastic upset of state laws and procedures is found in the Bankruptcy Code.”
 
 Madrid,
 
 725 F.2d at 1202.
 
 [5]
 
 Accordingly, the judgment of the District Court is affirmed.
 

 [1]
 

 . It could not simply file a new Chapter 7 petition for this purpose at this time, because the period predating the petition within which the trustee could attempt to set aside voidable transfers would have expired with respect to the foreclosure sale, and the subsequent petition would not relate back to the date of the first filing.
 
 See In re Arrington,
 
 7 B.R. 164, 166 (Bankr.W.D.N.C.1980);
 
 In re Earl’s Tire Service, Inc.,
 
 6 B.R. 1019, 1022-23 n. 9 (Bankr.D.Del.1980).
 

 [2]
 

 . "An inadequate sale price, in and of itself, is an insufficient ground for setting aside a foreclosure sale by advertisement under Michigan law.... In order for such a sale to be set aside, there must be both a grossly inadequate sale price and some other defect such as fraud, mistake, unfairness, or irregularity.”
 
 Gottlieb v. McArdle,
 
 580 F.Supp. 1523, 1525-26 (E.D.Mich.1984) (citations omitted).
 

 [3]
 

 .This section reads as follows:
 

 For the purposes of this section, a transfer is made when such transfer [becomes so far]
 
 is so
 
 perfected that a bona fide purchaser from the debtor against whom [such transfer could have been]
 
 applicable law permits such transfer to be
 
 perfected cannot acquire an interest in such property of the transferee, but if such transfer is not so perfected before the commencement of the case, such transfer [occurs]
 
 is made
 
 immediately before the date of filing of the petition.
 

 11 U.S.C. § 548(d)(1) (as amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98-353, § 463(c)(1), 98 Stat. 333, 379 (deleting bracketed language and adding italicized language)).
 

 Section 548(a) was also amended by § 463(a) of the Bankruptcy Act of 1984 to insert the following italicized languages: "The trustee may
 
 *1139
 
 avoid any transfer of an interest of the debtor in property ... if the debtor
 
 voluntarily or involuntarily
 
 — ... (2)(A) received less than a reasonably equivalent value_” One commentator has suggested that by this language Congress sided with the view in
 
 Durrett
 
 on the question of transfer.
 
 See
 
 Jackson,
 
 Avoiding Powers in Bankruptcy,
 
 36 Stan.L.Rev. 725, 780 n. 175 (1984).
 

 There is no reference whatsoever to the amendments of § 548 of the Code in the scant legislative history of the 1984 Bankruptcy Amendments. Contrary to the commentator’s suggestion, however, focusing on § 548(a), the amended wording does not weaken the interpretation of the
 
 Madrid
 
 court, which regarded § 54.8(d)(1) as determinative of when a transfer of a secured interest occurred.
 

 [4]
 

 . The court in
 
 Richardson
 
 makes the argument that
 

 [s]tate law’s sanction of exchanges in foreclosures which are not reasonably equivalent gives effect to state contract and foreclosure policy but may overlook the interests of other creditors of the debtor. The determination of reasonable equivalence should not be controlled by state law. Rather, reasonable equivalence should be determined in light of the function of Section 548 in fostering an equitable distribution of the debtor’s property. [23 B.R. at 447 (footnote omitted) ]
 

 While the power of the trustee to avoid certain preferential transfers was clearly intended to assure the equitable distribution of a debtor's assets among unsecured creditors, it can hardly be argued that Congress intended the rights of such creditors necessarily to override those of good faith purchasers at state foreclosure sales or the policy judgments of states in balancing the interests of parties thereto.
 
 Cf. Kapela v. Newman,
 
 649 F.2d 887, 890-91 (1st Cir.1981) (Where Bankruptcy Act preference rules conflict with Article 9 of U.C.C. relating to secured transactions, “it is important to interpret the two statutes in a way that minimizes such conflicts and harmonizes the policies that underlie them.”). Moreover, in another context in which federal law has been held to override state law governing the setting aside of foreclosure sales for inadequacy of price, the federal rule is much more strict than that applied by
 
 Durrett
 
 in defining what constitutes "fair equivalence.” In
 
 Gottlieb v. McArdle,
 
 580 F.Supp. 1523 (E.D.Mich.1984), the court observed that federal law governed in determining the remedies available to the United States upon default of a federally held mortgage, in order "to promote the security of federal investments and to facilitate the building of homes by the use of federal funds.” 580 F.Supp. at 1525 (citations omitted). The court stated that under federal law, a foreclosure sale may be set aside only "if the inadequacy of the price obtained on foreclosure is ‘so gross as to shock the conscience.’”
 
 Id.
 
 (citations omitted). It cannot be said that the sale in the instant case to a bona fide third party for 1400,000 against an indebtedness of $225,000, in a period admittedly of declining market values and high interest rates "shocks the conscience.”
 

 [5]
 

 . Although the court in
 
 Richardson
 
 draws numerous analogies in arguing that "there is nothing novel in avoiding transfers under bankruptcy law which are valid under state law.” 23 B.R. at 448 (footnote omitted), the unprecedented nature of the
 
 Durrett
 
 rule is emphasized by the dissenting judge in
 
 Abramson:
 
 "It is interesting to me that
 
 Durrett
 
 is the first case treating this problem — after 90 years of bankruptcy law and mortgages of a time greater than the memory of man. It again establishes what an imaginative lawyer can do when he adds persuasion." 647 F.2d at 550 (Clark, J., dissenting).