### In re FREMONT BATTERY COMPANY, Debtor.

**Bankruptcy No. 86–02354.**

United States Bankruptcy Court, N.D. Ohio, W.D.

Feb. 24, 1987.

John M. Carey, Toledo, Ohio, for debtor.

H. Buswell Roberts, Toledo, Ohio, for Fremont Special Machine & Robert Simonton.

Truman A. Greenwood, Toledo, Ohio, for GGEC.

John K. Nelson, Joseph P. Thacker, Toledo, Ohio, for Fremont Sp. Machine.

### OPINION AND ORDER DENYING DEBTOR'S MOTION FOR ORDER AUTHORIZING EXCHANGE OR SALE OF ASSETS

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter came on to be heard upon Debtor's motion for an order authorizing exchange of certain personal property for shares of stock or, in the alternative, to sell the property at auction, free and clear of liens, to which an objection was filed by creditors, Fremont Special Machine Company, Inc. and Robert D. Simonton. Upon consideration of the evidence adduced at the hearing and the stipulations and oral arguments of the parties, the court finds that the objection is well taken and should

be sustained and that the Debtor's motion is not well taken and should be denied.

## FACTS

Debtor, Fremont Battery Company, Inc., filed its voluntary petition in bankruptcy under chapter 11 on October 29, 1986. On December 18, 1986, Debtor filed a motion for authority to exchange certain personal property for stock or, alternatively, to sell the property. Debtor proposed to sell substantially all of its personal property, including furniture, equipment, inventory and raw materials, valued at approximately $170,000, at public auction with a reserve bid of $600,000.00. If the sale were consummated, the proceeds would be subject to the security interest of creditor Gulf General Engineering Consultants, Inc. (hereinafter "GGEC"). GGEC has a claim of $900,000, representing a secured claim in Debtor's inventory, equipment and accounts receivable, with the remainder representing an unsecured claim.

Alternatively, if no bids were received, and none had been as of the hearing date, December 30, 1987, Debtor proposed to exchange the above described personal property for shares of stock in F.B. Manufacturing Co. These shares would then be distributed to GGEC, in full satisfaction of its claim. In such a situation, the unsecured creditors would be forced to seek satisfaction of their claims from Debtor's accounts receivable, preference claims and potential litigation recoveries, if any.

However, Debtor has one other asset, a $4,000,000 net operating loss (NOL). If the exchange took place, this NOL would be transferred to F.B. Manufacturing Co. Debtor's tax expert testified that the value of this asset depends on the situation. That is, § 368(a)(1)(G) of the Internal Revenue Code allows an insolvent company to convey its NOL to another organization provided a continuity in the successor organization results. That is the successor organization must carry on the same trade or business as its predecessor. This witness opined that Debtor's NOL may have a value to F.B. Manufacturing up to $1,600,000. Alternatively, Debtor could carry this same asset forward for 15 years. The urgency of this motion, according to this witness, is due to the new 1987 tax laws which were to take effect in two days.

Creditors, Fremont Special Machine, Inc. and Robert D. Simonton, objected to Debtor's proposed sale for several reasons including that the proposal was filed without the filing of a disclosure statement or plan, that the proposal constitutes a restructuring of the Debtor-creditor relationship, and that the unsecured creditors would be forced to seek satisfaction of their claims from the remaining corporate shell.

## DISCUSSION

Debtor's request for authority to exchange or sell property is governed by 11 U.S.C. § 363(b)(1) which provides:

The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.

In *In Re Lionel Corp.*, 722 F.2d 1063 (2d Cir.1983), the second circuit discussed the circumstances under which a bankruptcy judge may authorize the sale of an important asset of the Debtor's estate, out of the ordinary course of business, and prior to the acceptance of a plan of reorganization. *Id.* at 1066. The court noted that while the Debtor has the burden under § 363(b) to present evidence demonstrating that a proposed sale will aid a Debtor's reorganization, the objecting party must present evidence supporting its objection. *Id.* at 1071. The *Lionel* court concluded by adopting a rule that requires a judge to find from the evidence that a good business reason exists for allowance of a § 363(b) application. *Id.* In weighing the evidence, the court must consider the interests of the Debtor, creditors and equity security holders. The following factors are relevant for this determination:

1. the value of the asset to the estate as a whole;

2. the amount of time which has elapsed since the filing of the petition;

3. the likelihood of reorganization;

4. the proceeds to be obtained from the disposition;

5. the possibility of a decrease or increase in the asset's value.

*Id.*

The sixth circuit in *Stephens Industries, Inc. v. McClung,* 789 F.2d 386 (6th Cir. 1986), adopted the *Lionel* rationale, concluding that "a bankruptcy court can authorize a sale of all a chapter 11 Debtor's assets under § 363(b)(1) when a sound business purpose dictates such action." *Id. See also In Re Continental Air Lines, Inc.,* 780 F.2d 1223 (5th Cir.1986); *In Re White Motor Credit Corp.,* 14 B.R. 584, 4 C.B.C.2d 1562 (Bkrtcy.N.D.Ohio 1981) (§ 363(b) does not authorize sale of substantially all estate assets). The court, after listing the considerations set forth by the *Lionel* court, indicated that the sale of the business was justified as Debtor was unable to meet its payroll and other operating expenses and the trustee's alternative was to cease operations. *Stephens,* 789 F.2d at 390.

■ Considering the *Lionel* factors set forth above as they pertain to the instant situation, this court finds that no business reason justifies Debtor's proposed sale. The proposed sale would not, as a whole benefit the Debtor or creditors. In fact, if allowed, the sale would terminate Debtor's existence. If Debtor's proposed sale were authorized, the likelihood of reorganization would dissipate as there would remain no assets from which a plan could be proposed. Additionally, the proceeds from the proposed sale would, at most, benefit one creditor only. The sale would not create proceeds that would inure to the benefit of the unsecured creditors. Lastly, the major asset, the NOL, will not fluctuate in value. No loss to Debtor will result by retaining the NOL as the NOL does not represent a depreciating asset such as that presented in the *Lionel* and *Stephens* cases.

■ The sale as proposed, also, contemplates a restructuring of the Debtor-creditor relationship. GGEC is the only creditor which may benefit from the proposed sale. No funds would remain, after the proposed sale, that would benefit other creditors or

that would provide funds from which a reorganization plan could be proposed. The fifth circuit in *In Re Braniff Airways, Inc.,* 700 F.2d 935, *reh'g denied* 705 F.2d 450 (5th Cir.1983), held that such a transaction was outside the scope of § 363. *Braniff,* 700 F.2d at 939. Additionally, as previously stated, sanctioning the proposed sale would have the practical effect of dictating the terms of the reorganization plan. The bankruptcy court may not circumvent a chapter 11 reorganization plan by allowing the terms of a plan to be dictated by the sale of a major asset. *See Braniff,* 700 F.2d at 940. The court may not, then, authorize Debtor's proposed sale as its result contemplates restructuring the Debtor-creditor relationship and exceeds the scope of § 363.

■ Furthermore, authorizing Debtor's proposed sale would constitute an abuse of chapter 11 bankruptcy. "The purpose of chapter 11 reorganization is to assist financially distressed business enterprises by providing them with a breathing space in which to return to a viable state." *Matter of Winshall Settlor's Estate,* 758 F.2d 1136, 1137 (6th Cir.1985) (citation omitted). Chapter 11 requires an "ongoing business" as an entity without assets or an ongoing business does not merit chapter 11 protection. *Id.* at 1136. *See also Matter of Little Creek Development Co.,* 779 F.2d 1068 (5th Cir.1986).

As previously discussed, the proposed sale would terminate Debtor's ongoing business. To authorize such a sale, would be an abuse of the chapter 11 protection to be afforded a business. The Debtor would be without assets from which a reorganization plan could be proposed and would no longer be conducting business. As such, the court may not authorize Debtor's proposed sale.

■ Lastly, a prerequisite to the filing of a chapter 11 reorganization is Debtor's good faith. *Matter of Winshall Settlor's Estate,* 758 F.2d at 1137. In making this determination, factors for consideration include:

1. whether the Debtor has any assets;

2. whether Debtor has an ongoing business to reorganize;

3. whether there is a reasonable possibility of a plan being proposed and confirmed.

*Id.*

As considered above, the proposed sale would deplete Debtor's assets and terminate its business. No reasonable possibility of a proposed and confirmed plan would, then, exist. By authorizing the proposed sale, the court would be sanctioning a sale in contravention of the policies of a chapter 11 reorganization.

In light of the foregoing reasons, it is therefore

ORDERED that the objection of Fremont Special Machine Company, Inc. and Robert D. Simonton be, and it hereby is, sustained. It is further

ORDERED that Debtor's motion for order authorizing exchange of certain personal property for shares of stock, or in the alternative, to sell at auction free and clear of lien, be, and it hereby is, denied.