**In re John W. Van DYKE, Jr., Debtor.**

**Bankruptcy No. L88–01173S.**

United States Bankruptcy Court,
N.D. Iowa.

Nov. 23, 1988.

A. Frank Baron, Sioux City, Iowa, for debtor.

Richard Malm, Des Moines, Iowa, for Norwest Bank/movant.

## MEMORANDUM AND ORDERS Re:
### Motion to Convert

MICHAEL J. MELLOY, Chief Judge.

A Motion to Convert filed by Norwest Bank of Sioux City, N.A. (Norwest Bank) came on for hearing on November 3, 1988. The Motion to Convert has been joined in by various other creditors. This Court now enters its Finding of Fact, Conclusions of Law and Order pursuant to Fed.R.Bankr.P. 7052.

### BACKGROUND

Norwest Bank has filed a Motion to Convert alleging two grounds for the motion. First, Norwest Bank alleges that the Debtor is not engaged in business and is therefore not eligible to file under Chapter 11. Second, Norwest Bank alleges that the Debtor has engaged in certain conduct which warrants conversion from Chapter 11 to Chapter 7 for cause. A preliminary hearing was held on the motion at which time it was agreed that the two issues would be bifurcated for hearing. This Court would first determine whether the Debtor is eligible for Chapter 11 relief. If it is determined that the Debtor is ineligible for Chapter 11 relief, then it would not be necessary to hold a hearing on the second ground alleged in support of the motion to convert. If this Court determines that the Debtor is eligible for Chapter 11 relief, then a separate hearing would be set on the issue of whether the case should be converted for cause.

### FINDINGS OF FACT

1. The Debtor, John W. Van Dyke, Jr., is the former president and chief executive officer of Toy National Bank. It is the understanding of this Court that the assets of Toy National Bank were purchased by Norwest Bank. As part of the purchase agreement, a consulting agreement was entered into between the Debtor and Norwest Bank. The Debtor is to be paid $7,500.00 per month under the consulting agreement and is to remain available for consulting services. Due to the strained relationship between the Debtor and Norwest Bank, the Debtor has not actually performed any con-

sulting services for Norwest Bank since at least July 1, 1988.

The Debtor is the subject of a cease and desist order issued by the Federal Reserve Board. The Debtor is prohibited by the Federal Reserve Board from being an officer, director or employee of any bank which is subject to the Federal Deposit Insurance Corporation or which is under the supervision or control of the Federal Reserve Board. The Debtor is contesting that cease and desist order; that issue is currently on appeal to the Eighth Circuit Court of Appeals.

2. The evidence shows the Debtor has the following interests in various business ventures.

a. The Debtor has ownership interests in seven (7) different pieces of real estate, including a 100 percent ownership interest in a Taco Bell restaurant in Belleview, Nebraska, and a Consolidated Freightways Terminal in Sioux City, Iowa.

b. The Debtor owns stock in approximately sixteen (16) different corporations, of which thirteen (13) corporations are closely held corporations. In several of those closely held corporations, the Debtor owns 50 percent or more of the stock.

c. The Debtor is also a participant in various partnerships and joint venture agreements, including real estate partnerships.

3. The Debtor is actively involved in the management and control of various business enterprises in which he holds an ownership interest. These management functions include the following:

a. The Debtor is chairman of the board of the Redfield Scope Corporation. Eighty percent of the stock of Redfield Scope Corporation is owned by Plum Investment Company. The Debtor owns one-sixth (1/6) of the stock of Plum Investment Company.

In addition to the Debtor's general duties as chairman of the board of Redfield Scope Corporation, he is also actively involved in attempting to sell the corporation. He has worked with investment bankers, accountants, private individuals, and other entities which may be interested in purchasing that company. The Debtor anticipates that he will receive a commission on the sale if his sales efforts are ultimately successful.

b. The Debtor owns 50 percent of the stock of Van Dyke Broadcasting Company. That company owns two radio stations in Kansas. The Debtor consults almost daily with the station managers concerning day-to-day management decisions of those two radio stations.

4. The Debtor is very active in the day-to-day management of his various other investments including the management of various pieces of rental property. This includes the management not only of those pieces of rental property which, he owns individually, but also management of rental properties owned by joint venture entities, partnerships, and corporations in which the Debtor has an ownership interest.

5. Debtor's Schedules and Statement of Affairs show total secured debt of $3,817,-692.00 and unsecured debt of $661,715.00. Out of that total indebtedness only two relatively small debts represent consumer debt. The Debtor owes $3,797.00 to Mastercard and $934.00 to American Express. Part of the charges represented by those two debts relate to items purchased or services obtained primarily for personal, family or household use. Thus, consumer debt constitutes less than one-tenth of 1 percent of Debtor's total debt. The balance of the total indebtedness of $4,479,407.00 relates to Debtor's investments and business ventures.

6. Debtor's 1986 and 1987 income tax returns show that the Debtor received a substantial portion of his income from interest, dividends, capital gains and other distributions from Debtor's investments and various business enterprises.

7. Taking into consideration Debtor's active management activities, his wide-ranging business ventures and his majority ownership interests in various business partnerships, closely held corporations, and other business entities leads this Court to the conclusion that the Debtor is actively engaged in business.

## CONCLUSION OF LAW AND DISCUSSION

The issue before the Court is whether the Debtor is engaged in business and therefore eligible for Chapter 11 relief. In the case of *Wamsganz v. Boatmen's Bank of De Soto,* 804 F.2d 503 (8th Cir.1986), the Court of Appeals held that the debtors did not own or operate a business and therefore were ineligible for Chapter 11 relief. The *Wamsganz* court reviewed the legislative history and the case law which has developed on the issue of eligibility for Chapter 11 relief and determined that only those debtors engaged in business were eligible for Chapter 11.

In the *Wamsganz* case, the debtors conceded that they did not own or operate any business entity. The court also noted that the debtors met the eligibility requirements for Chapter 13 relief. The debtors' only income was derived from wages, social security and rental income. Under the facts of that case, the court held that the debtors were not eligible for Chapter 11 relief. The court went on to state: "The House Report's chapter on 'reorganization' likewise excludes any discussion of consumer debtors and refers to chapter 11 as 'a consolidated chapter for all business reorganizations.'" *Wamsganz,* 804 F.2d at 505 (citations omitted).

The *Wamsganz* court did not define what was meant by "engaged in business" for purposes of Chapter 11 eligibility. However, reviewing the facts of the *Wamsganz* case leads this Court to the conclusion that the *Wamsganz* court was primarily concerned about consumer debtors who otherwise met the eligibility requirements for Chapter 13 relief. The court there was careful to point out that the debtors in that case did not contend that they either owned or operated any businesses. Likewise, the court pointed out that the debtors in the *Wamsganz* case were eligible for Chapter 13 relief. Thus, the debtors had a non-liquidation reorganization alternative available to them if they chose to proceed with a reorganization.

This Court concludes that the Debtor in this case clearly is engaged in business activities. The Debtor owns controlling interest in a bank holding company, 80 percent of the stock of a leasing company, one-half of the stock of a radio broadcasting company, as well as interests in many joint ventures, partnerships and closely held corporations. The Debtor devotes his time, almost exclusively, to the day-to-day management activities of those business entities. The Debtor in this case clearly meets any common sense definition of a person engaged in business enterprises.

Unlike the debtors in the *Wamsganz* case, this Debtor does not qualify for Chapter 13 relief. The eligibility requirements for Chapter 13 relief limit Chapter 13 to those debtors who have unsecured debts of less than $100,000 and secured debts of less than $350,000. 11 U.S.C. § 109(e). Clearly, the debts owed by this Debtor are far in excess of the amounts which would qualify him for Chapter 13 relief.

Reviewing the Court of Appeals decisions cited in *Wamsganz* also leads this Court to the conclusion that this Debtor is eligible for Chapter 11 relief. One case cited was the *Matter of Winshall Settlor's Trust,* 758 F.2d 1136 (6th Cir.1985); the second case cited was the *Matter of Little Creek Development Co.,* 779 F.2d 1068 (5th Cir.1986). In both of those cases the courts were addressing the issue of whether the debtor had filed their case in good faith. Both cases held that an element of good faith is whether a debtor has any assets and whether the debtor has an ongoing business to reorganize. There has been no evidence presented to date that the case filed by this Debtor was not filed in good faith. While that may be an issue to be litigated in the second phase of this bifurcated motion for conversion to Chapter 7, that is not an issue presently before the Court.

In reviewing the relevant case law in the area, this Court has been unable to find any cases in which a debtor was found to be ineligible for Chapter 11 relief while at the same time being engaged in business activity at or anywhere near the level of this Debtor. In many of the cases in which the "engaged in business" issue is raised,

the debtor has already lost all or substantially all of their property and the court is reviewing the case in the context of whether there is any business left to reorganize. *See e.g., In re Lange,* 75 B.R. 154 (Bankr. N.D.Ohio 1987).

In conclusion, this Court finds that the Debtor is engaged in meaningful and real business activities and therefore the Debtor is eligible for Chapter 11 relief.

### ORDER

IT IS THEREFORE ORDERED that the Motion to Convert to Chapter 7 on the grounds that the Debtor, John W. Van Dyke, Jr., is not engaged in business is overruled.

IT IS FURTHER ORDERED that a continued hearing on the Motion to Convert to consider the alternate grounds for conversion will be held on:

JANUARY 23, 1989 AT 11:00 A.M.

Third Floor Court Room, U.S. Court House, SIOUX CITY, Iowa.

ORDERED.