**In re Marvin L. STULLEY, Helene L. Stulley, Debtors.**

**Bankruptcy No. 2–89–02780.**

United States Bankruptcy Court, S.D. Ohio, E.D.

Nov. 29, 1989.

Charles W. Ewing, Columbus, Ohio, for debtors.

Jack R. Pigman, Polly J. Harris, Porter, Wright, Morris & Arthur, Columbus, Ohio, for The Kingston Nat. Bank.

Charles M. Caldwell, Office of the U.S. Trustee, Columbus, Ohio, Asst. U.S. Trustee.

ORDER GRANTING MOTION FOR RELIEF FROM STAY AND MOTION TO DISMISS

R. GUY COLE, Jr., Bankruptcy Judge.

Before the Court are a motion for relief from the automatic stay and a motion for

dismissal of this Chapter 11 case. Both motions were filed and supported by Kingston National Bank and opposed by the debtors. An evidentiary hearing was held on November 21, 1989, following which these matters were taken under advisement.

The Court's jurisdiction over these contested matters is provided by 28 U.S.C. § 1334(b) and the General Order of Reference entered by the district court. This is a core proceeding which the Court may hear and determine pursuant to 28 U.S.C. § 157(b)(1), (2)(A) and (G).

## I. *Facts*

Debtors Marvin L. Stulley and Helene L. Stulley ("Debtors") and Kingston National Bank ("Kingston") entered into the following stipulations of fact, which were filed in this Court on November 21, 1989:

1. Kingston has mortgages and judgment liens in place against Debtors' home, which, as of the date of Debtors' bankruptcy petition, totalled $247,014.35.

2. The market value of Debtors' home is $80,000.00.

3. Debtors have no equity in their home, and the encumbrances on their home exceed the value thereof by at least $167,-014.35.

4. Debtors are the only full-time occupants of their home. Their college-age son, Mark, lives in the home on weekends.

5. Debtor Marvin L. Stulley's place of employment is located seven miles from Debtors' home. Debtor Helene L. Stulley's place of employment is located two miles from Debtors' home.

6. Debtor Marvin L. Stulley is the president of Flo–Lizer Ag, Inc. ("Flo–Lizer Ag") and owns 26.4% of the stock of Flo–Lizer Ag.

7. Flo–Lizer Ag was formed in September, 1987, to purchase certain assets and assume certain liabilities of Flo–Lizer, Inc. ("Flo–Lizer"), which was in a Chapter 11 reorganization. Among the liabilities Flo–Lizer Ag assumed was a $3,000,000.00 obligation of Flo–Lizer to American Security Bank, Washington, D.C.

8. Flo–Lizer Ag leases all of its assets to Ag Leasing, Inc. ("Ag Leasing"), an Indiana corporation, for $200,000.00 per year.

9. The lease between Flo–Lizer Ag and Ag Leasing terminated in June, 1989.

10. Ag Leasing and Flo–Lizer Ag are renegotiating their lease.

11. All of Flo–Lizer Ag's rental income from Ag Leasing is turned over to American Security Bank, which has an assignment of such rentals.

12. Since it began business in 1987, Flo–Lizer Ag has never shown a profit from operations and has a negative net worth.

13. Debtor Marvin L. Stulley is general manager of Ag Leasing, and receives a fixed salary from Ag Leasing which is not dependent on the profits of Ag Leasing.

14. Debtor Marvin L. Stulley has never received a bonus from Ag Leasing.

15. Debtor Marvin L. Stulley has no written agreement with Ag Leasing for the payment of bonus or incentive compensation.

16. Debtor Marvin L. Stulley has an oral agreement with Ag Leasing that he is to receive 5% of Ag Leasing's net profits.

17. Ag Leasing has never shown a profit, and has lost $1,100,000.00 to $1,200,-000.00 since it commenced business in September, 1987.

18. Debtor Marvin L. Stulley does not have an ownership interest in Ag Leasing.

19. Debtors have two secured creditors: Kingston and BancOhio National Bank ("BancOhio").

20. Debtors have agreed to repay BancOhio in full according to the terms of their note to BancOhio pursuant to an Agreed Order entered July 24, 1989.

21. At the time they filed their bankruptcy petition, Debtors were current on their payments to all of their secured and unsecured creditors with the exception of Kingston.

22. Debtor Helene L. Stulley is not and has never been employed by Flo–Lizer Ag.

23. Debtor Helene L. Stulley received an inheritance of $20,500 in September, 1988.

24. Kingston obtained a Judgment Decree in Foreclosure on December 8, 1986, pursuant to which Debtors' home was scheduled for foreclosure sale on February 17, 1987 (the "First Sale").

25. At Debtor's request, on February 17, 1987 Debtors and Kingston executed an Agreed Post–Judgment Entry (the "First Entry"), pursuant to which Kingston agreed to cancel the First Sale provided Debtors made the payments called for in the First Entry.

26. Kingston scheduled a second foreclosure sale for Debtors' home (the "Second Sale") to take place on November 17, 1987.

27. At Debtor's request, on November 17, 1987, Debtors and Kingston executed a Second Agreed Post–Judgment Entry (the "Second Entry"), pursuant to which Kingston agreed to cancel the Second Sale provided Debtors made the payments called for in the Second Entry.

28. Pursuant to the Second Entry, Debtors were to make payments of $1,200.00 per month to Kingston beginning December 15, 1987 and continuing on the 15th day of each month through and including November 15, 1988. Debtors were to pay Kingston $10,000.00 on October 31, 1988, and the balance due to Kingston was to be paid in full by December 15, 1988.

29. Debtors defaulted on the payments due October 31, 1988 and December 15, 1988. Debtors continued to pay Kingston $1,200.00 per month through March, 1989.

30. As a result of Debtors' default, Kingston scheduled a third foreclosure sale (the "Third Sale"), which was to take place on May 16, 1989.

31. Debtors filed their petition in bankruptcy on May 15, 1989.

32. Debtors' bankruptcy filing is not intended to be a reorganization of Flo–Lizer Ag. None of Flo–Lizer Ag's debts or assets are listed on Debtors' bankruptcy petition and schedules.

The following, additional facts were adduced at hearing:

33. Debtors' home has three bedrooms, two baths and approximately 1,700 square feet in interior space. The home has a monthly fair market rental value of at least $575.

34. Debtors estimate it would cost $3,000 to $4,000 to have their belongings moved from their current house into another residence; however, this figure was an unsupported opinion and is unreasonably high.

35. Flo–Lizer Ag, of which Debtor Marvin L. Stulley is president, has no place of business and no books and records, except for a checking account. There is no evidence that Debtor Marvin L. Stulley has any duties or responsibilities as president of Flo–Lizer Ag.

36. Ag Leasing is not a debtor in this Court or in any other bankruptcy court.

37. Debtors filed their petition in this Court on the eve of the third scheduled foreclosure sale for the sole purpose of stopping said foreclosure proceedings.

38. Debtor Helene L. Stulley is employed by the Pickaway County Department of Human Services at an annual salary approximating $20,000.

## II. *Discussion*

### A. Motion for Relief from Stay

Kingston seeks relief from the automatic stay imposed by 11 U.S.C. § 362(a). The automatic stay takes effect upon filing of a bankruptcy petition and generally halts all debt collection activity against the debtor or the bankruptcy estate. It is one of the fundamental protections accorded a debtor under the Bankruptcy Code. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 340 (1977), 1978 U.S.Code Cong. & Admin.News 5787, 6296. The automatic stay implements two goals: (1) it prevents the diminution or dissipation of the assets of the estate; and (2) it enables the debtor to avoid the multiplicity of claims against the estate arising in different forums. *In re Curtis*, 40 B.R. 795, 798–99 (Bankr.D.Utah 1984); *Fidelity Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 55 (2d Cir.1976), *cert.*

*denied* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977) (automatic stay is intended "to prevent a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts.... [it] insures that the debtor's affairs will be centralized, initially, in a single forum in order to prevent conflicting judgments from different courts and in order to harmonize all of the creditors' interests with one another."). The stay gives the debtor a much-needed breathing spell in which to attempt a rehabilitation of its financial affairs and, thus, has been described as "indispensable to the effective administration of the Chapter 11 reorganization." *In re Island Helicopter Corp.*, 63 B.R. 809, 814 (Bankr.E.D.N.Y.1986).

Congress, cognizant of the potential for harm to secured creditors due to imposition of the automatic stay, established a procedure whereby such creditors may obtain relief. Under § 362(d), creditors may obtain relief from stay in two instances: (1) where the debtor has no equity in the subject property and such property is not necessary to an effective reorganization [11 U.S.C. § 362(d)(2) ]; or (2) where cause exists to grant relief from stay, including lack of adequate protection of a secured creditor's interest in its collateral [11 U.S.C. § 362(d)(1) ]. Here, Kingston seeks relief from stay under both §§ 362(d)(1) and (d)(2).[1]

### 1. *11 U.S.C. § 362(d)(2)*

■ 11 U.S.C. § 362(d)(2) provides that a bankruptcy court shall grant relief from the automatic stay:

> with respect to a stay of an act against property ... if—
>
> (A) the debtor does not have equity in such property; and
>
> (B) such property is not necessary to an effective reorganization.

The party requesting relief has the burden of proof on the issue of the debtor's equity in property and the party opposing such relief has the burden on all other issues. *See* 11 U.S.C. § 362(g).

In the instant proceeding, it is undisputed that the $247,014.35 in mortgages and judgment liens encumbering Debtors' $80,000 home leaves Debtors with no equity in that property. Accordingly, Kingston has met the test for relief established by § 362(d)(2)(A). If the Debtors are unable to carry their burden under § 362(d)(2)(B), then Kingston is entitled to the relief it has requested.

Debtors claim that their house is necessary to an effective reorganization. In support of that assertion, Debtors claim that Marvin L. Stulley, a full-time employee of Ag Leasing at a location seven miles from his home, sometimes works on Flo–Lizer Ag matters at home. Debtors also claim that it would cost them $3,000 to $4,000 to relocate if Kingston is granted relief from the automatic stay and proceeds with its state court foreclosure action. Notably absent, however, is any evidentiary—or nonevidentiary—support for these assertions.

According to Debtors' schedules, Flo–Lizer Ag is in the business of selling and leasing agricultural products and equipment. Its only assets are leased to Ag Leasing pursuant to a now-terminated written lease agreement (Stip. Para. 8). Aside from the lease arrangement, there is no evidence of any other business activity by Flo–Lizer Ag. For example, except for a checking account, Flo–Lizer Ag maintains no books and records. It appears to have no employees. It apparently pays no salary or income to anyone, and certainly not to its president, Marvin L. Stulley. Because of the absence of discernible business activity, Kingston has characterized Flo–Lizer Ag as a sham corporation. In any event, Debtor Marvin L. Stulley, holder of 26.4% of the outstanding shares of Flo–Lizer Ag, does not purport, or intend to attempt, reorganization of that company's affairs in this Chapter 11 proceeding.

---

1. Section 362(d) is worded in the disjunctive; hence, a party seeking relief from stay need establish only one of the two alternative grounds for relief in order to prevail. *In re Rouse,* 43 B.R. 380 (Bankr.E.D.Pa.1984); *In re Pannell,* 12 B.R. 51 (Bankr.E.D.Pa.1981).

As for relocation costs, there is no support for Debtors' estimate nor is there any evidence that incurrence of such costs, even if believed, would work a hardship on Debtors. Having examined the record as a whole, including the demeanor of Marvin L. Stulley as a witness, the Court is unable to accept his estimate of relocation costs. The Court concludes that such costs would be significantly less than estimated; further, there is no evidence that such costs would have any bearing on Debtors' reorganization efforts in this proceeding.

The phrase "such property is not necessary to an effective reorganization" was examined recently by the United States Supreme Court. In *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 632, 98 L.Ed.2d 740 (1988), the Supreme Court interpreted this phrase as follows:

> What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect.* This means, as many lower courts, including the en banc court in this case, have properly said, that there must be "a reasonable possibility of a successful reorganization within a reasonable time."

(citations omitted) (emphasis in text).

Here, the Debtors have made no showing that their home is essential for an effective reorganization. Nor have they, despite the filing of a probably unconfirmable plan, shown that a reorganization "is in prospect." To the contrary, there is no genuine reorganization of any person or entity planned. Neither Flo–Lizer Ag nor Ag Leasing is subject to this or other reorganization proceedings. And Debtors, both salaried employees, have no need—and probably no entitlement—to invoke the protections of Chapter 11. It is, therefore, patently obvious that the sought-after reorganization is, in reality, yet another obstacle erected by Debtors in their quest to save their home from foreclosure.

In short, the Debtors have not carried their burden under § 362(d)(2)(B). In fact, they made only a token effort to support their claim that the house is necessary to an effective reorganization. Their lack of any meritorious "defense" is not surprising when one examines the undisputed facts, the law, and importantly, the Debtors' motivation for filing this Chapter 11 case. Debtors have succeeded, nevertheless, in one sense: they stopped the foreclosure sale scheduled for May 16, 1989, and have benefitted from more than six months of undeserved protection in this Court. Even if Kingston were to re-commence foreclosure proceedings today, the cumbersomeness of the process makes it unlikely that a foreclosure sale could be scheduled before the year 1990. By that time, Debtors would have gained nearly a year's occupancy in their home without making a mortgage payment to Kingston.

Kingston has met the criteria set forth in § 362(d)(2) from the automatic stay. Accordingly, its motion for relief from stay is hereby granted.

### 2. *11 U.S.C. § 362(d)(1)*

Kingston also requests relief for cause, including a lack of adequate protection of its interest in the house, pursuant to § 362(d)(1). Debtors' patent ineligibility to seek relief under Chapter 11 of the Bankruptcy Code and their filing for the sole purpose of frustrating Kingston's foreclosure efforts constitute cause for such relief. Included therein is the obvious lack of adequate protection of Kingston's interest in the Debtors' home.

### B. Motion to Dismiss

Debtors filed their joint petition for Chapter 11 relief on May 15, 1989, the day before the third scheduled foreclosure sale of their home. Debtor Marvin L. Stulley earns approximately $45,000 a year as general manager of Ag Leasing; his wife earns $20,000 in her job with Pickaway County. Neither debtor operates or owns a business.

At the time they filed their petition the Debtors had only two secured creditors,

Kingston and BancOhio, whose secured claim on a vehicle is being paid pursuant to an agreed entry in this Court. The Debtors had only six unsecured creditors when the petition was filed and were current on those obligations.

The Debtors' house is their only major asset and is substantially overburdened by mortgages and judgment liens. Kingston has tried since 1987 to foreclose its interests in the property, but has been unsuccessful in three attempts. The last attempt was aborted by the filing of this case.

Good faith has been recognized as an implicit and essential prerequisite to the filing or continuation of a proceeding under Chapter 11 of the Bankruptcy Code. *In the Matter of Winshall Settlor's Trust,* 758 F.2d 1136, 1137 (6th Cir.1985); *see also In re Phoenix Piccadilly, Ltd.,* 849 F.2d 1393 (11th Cir.1988); *In the Matter of Little Creek Development Co.,* 779 F.2d 1068 (5th Cir.1986); *In re Albany Partners,* 749 F.2d 670 (11th Cir.1984). The absence of such good faith may constitute cause for dismissal under § 1112(b). *In the Matter of Winshall Settlor's Trust,* 758 F.2d at 1137; *In re Dolton Lodge Trust No. 35188,* 22 B.R. 918, 922 (Bankr.N.D.Ill.1982). The Sixth Circuit has stated repeatedly that a determination of good faith must be made in Chapter 13 cases based upon the totality of the circumstances presented. *See Metro Employees Credit Union v. Okoreeh–Baah (In re Okoreeh–Baah),* 836 F.2d 1030, 1033–34 (6th Cir.1988); *Hardin v. Caldwell (In re Caldwell),* 851 F.2d 852, 859–60 (6th Cir.1988). Included in the Court's good faith calculus are the following, additional considerations:

1. whether the debtor is an ongoing business that may be rehabilitated consistent with the Congressional intent and protection afforded by Chapter 11;

2. whether the debtor has filed a petition for reorganization on the eve of foreclosure or similar judicial action and bankruptcy offers the only means of forestalling loss of the business; and

3. whether the debtor has a realistic probability of successful reorganization.

See *In re Rad Properties, Inc.,* 84 B.R. 827, 830 (Bankr.M.D.Fla.1988). In no manner, however, is the Court suggesting that an eve-of-foreclosure bankruptcy filing is bad faith *per se* or *prima facie* evidence of bad faith. Many legitimate reorganization proceedings are, in fact, precipitated by foreclosure or other judicial actions.

█ In this case, however, the facts establish that the Debtors' sole motivation for filing a Chapter 11 proceeding was to avoid foreclosure. The Debtors freely admit this intention, although they attribute artificial business purposes to their request for this Court's protection. Notwithstanding these transparent assertions, it is evident that this Chapter 11 case was filed in bad faith, with the sole purpose of delaying or frustrating Kingston's foreclosure proceedings. Such a finding supports dismissal on bad faith grounds. *In re Bryan,* 69 B.R. 421 (Bankr.D.Mont.1987).

It is also clear that the Debtors do not have an ongoing business which would be subject to rehabilitation. As noted by the Sixth Circuit, "[i]f there is not a potentially viable business in place worthy of protection and rehabilitation, the Chapter 11 effort has lost its *raisin d'etre....*" *In the Matter of Winshall Settlor's Trust,* 758 F.2d 1136, 1137 (6th Cir.1985) quoting *In re Ironsides, Inc.,* 34 B.R. 337, 339 (Bankr.W.D.Ky.1983). In the case *sub judice,* Debtors are salaried employees who do not own or operate a business. Thus, they are not entitled to proceed in, and could not legitimately benefit from, a Chapter 11 proceeding. According to their bankruptcy schedules, they qualify for relief under Chapter 7 and 13 of the Bankruptcy Code, and, therefore, are not ineligible for relief under those chapters of the Bankruptcy Code.

Accordingly, cause exists for dismissal of this Chapter 11 case for cause pursuant to 11 U.S.C. § 1112(b). The Court further determines that, inasmuch as this is a two-party dispute between Debtors and Kingston, and there are few, if any, prepetition claims aside from Kingston's, that dismis-

sal is in the best interest of creditors and the estate. The Court finds further that the interests of creditors and the Debtors would be better served by dismissal of this case. *See* 11 U.S.C. § 305(a).

### III. *Conclusion*

For the foregoing reasons, and upon the grounds stated, the motions for relief from stay and for dismissal are hereby GRANTED.

IT IS SO ORDERED.