**In re CASTLETON ASSOCIATES LIMITED PARTNERSHIP, Debtor.**

**Bankruptcy No. IP 89–3639 RA J.**

United States Bankruptcy Court,
S.D. Indiana,
Indianapolis Division.

Nov. 1, 1989.

James Carr, Jay Jaffe, Martha Lehman, Indianapolis, Ind., for debtors.

Wayne Ponader, Indianapolis, Ind., David Day, for Travelers.

Jo Ann Mason, Indianapolis, Ind., for U.S. Trustee.

## ORDER GRANTING TRAVELER'S MOTION TO DISMISS

FRANK J. OTTE, Bankruptcy Judge.

This matter came before the Court upon the Motion to Dismiss Debtor's Bankruptcy, or, in the Alternative, for Relief from the Automatic Stay and for Permission to Foreclose Mortgage ("the Motion") filed by Traveler's Insurance Company ("Travelers"). Evidentiary hearings on the dismissal portion of the motion were held on September 12th, 15th and 21st. The parties were given the opportunity to present oral argument on October 6, 1989. Present at all three evidentiary hearings and the oral argument were James Carr, Jay Jaffe and Martha Lehman, for the Debtors; Wayne Ponader and David Day for Travelers; and Jo Ann Mason for the United States Trustee.

The Court took ruling on the matter under advisement at the completion of the evidence on September 21, 1989. The parties were directed to file post-hearing briefs and have complied with that directive. The Court also has the benefit of extensive pre-hearing briefs, memoranda, and proposed findings of fact and conclusions of law. In addition, the United States Trustee has filed its recommendations and supports dismissal of this chapter 11 proceeding.

### Background

Castleton Associates Partnership was formed in 1985 for the exclusive purpose of purchasing an apartment project located in northeast Indianapolis known as Lake Castleton Arms Apartments. Its general partners were Claremont Castleton Limited Partnership ("Claremont") and Castleton Investors Limited Partnership ("Castleton Investors"). The general partner of Castleton Investors in turn was Winthrop Financial Associates and 200 investor limited partners. Castleton Investors is also a Debtor in this bankruptcy court under cause number IP 89–6547 RA B.

Winthrop Financial Associates purchased most of Claremont's general partner interest in Castleton Associates Partnership which then became known as Castleton Associates Limited Partnership, ("Castleton Associates") the debtor here. Before the purchase of Claremont's interest, Castleton Associates Partnership in November, 1985, purchased for $35 million the 1265 unit Lake Castleton Arms Apartments complex. The complex had been appraised at $40 million.

Travelers provided the majority of the financing to purchase the project and loaned Castleton Associates Partnership $28,650,000.00. The balance was funded by 200 various investors that bought limited partnership interests in the project at a cost of $55,500.00 per investment unit.

First Winthrop Properties, Inc. ("First Winthrop") assumed the management duties of the project in March, 1987, succeeding the prior management company which had been Claremont Management Company.

The market for apartment rentals on the northeast side of Indianapolis slackened after purchase by Castleton Associates due to the affordability of single family dwellings and competitive rental packages being offered by other apartment projects. The decline in the rental market affected Cas-

tleton Associates to the point where it failed to make its mortgage payment to Travelers in December, 1988. The payment was an "interest only" mortgage. After negotiations between the parties failed to produce an agreement, Travelers filed to foreclose its mortgage in state court on May 9, 1989. Castleton Associates filed for relief under chapter 11 of the Bankruptcy Code on May 18, 1989, four days prior to a state court hearing to appoint a receiver.

As of the petition date, Castleton Associates listed unsecured debt of $283,000.00, of which approximately $60,000.00 is a claim by a former tenant which appears to be covered by insurance, and of which over $117,000.00 consists of management fees due First Winthrop. The evidence in the hearings showed that Castleton Associates had a right to call on its general partner, Winthrop Financial Associates, to release a reserve account of $1.5 million for repairs. Castleton Associates listed priority unsecured debt of nearly $300,000.00 in unpaid real estate and personal property taxes. The amount needed for repairs as of the time of the filing was estimated at $1.7 million. Finally, Travelers in the hearings established that the outstanding balance on Castleton Associate's mortgage was in excess of $30 million. In the Joint Plan of Reorganization filed by Castleton Associates and Castleton Investors on September 11, 1989, it was proposed that Travelers would be paid its secured claim which was the value of the project, estimated at $24 million, leaving Travelers with an approximate $6 million unsecured deficiency. Travelers was to receive under the plan a 5% payment ($300,000.00) on its deficiency. And, even though $24 million was subject to speculation as it was the Debtor's value of the project, the parties stipulated that the project's value was less than the amount owed to Travelers on its mortgage. The evidence at the hearings also established that, although the project had declined in value over the last four years, its value was actually on a slight upswing due to improvements made after the filing of the chapter 11 and favorable market conditions.

In its motion, Travelers seeks dismissal of the chapter 11 as it was not filed in good faith since the Debtor here is not an entity that is a true business seeking to reorganize.

### Discussion

Section 1112(b) of the Bankruptcy Code provides:

> Except as provided in subsection (c) of this Section, on request of a party in interest or the United States trustee, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—
>
> (1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;
>
> (2) inability to effectuate a plan;
>
> (3) unreasonable delay by the debtor that is prejudicial to creditors;
>
> (4) failure to propose a plan under section 1121 of this title within any time fixed by the court;
>
> (5) denial of confirmation of every proposed plan and denial of a request made for additional time for filing another plan or a modified plan under section 1129 of this title;
>
> (6) revocation of an order of confirmation under section 1144 of this title, and denial of confirmation of another plan or a modified plan under section 1129 of this title;
>
> (7) inability to effectuate substantial consummation of a confirmed plan;
>
> (8) material default by the debtor with respect to a confirmed plan;
>
> (9) termination of a plan by reason of the occurrence of a condition specified in the plan; or
>
> (10) nonpayment of any fees or charges required under chapter 123 of title 28.

A chapter 11 proceeding can be dismissed "for cause". Because the Code imposes an implicit requirement that a chapter 11 proceeding be filed in "good faith", courts have determined that "cause" for

dismissal include a chapter 11 petition that is not filed in "good faith". This elusive "good faith" standard is not defined by the Bankruptcy Code but "should be viewed as objective rather than subjective. That is, the court's inquiry should primarily focus on the presence or absence of ascertainable, objective factors, or 'guidelines' ". *In re Schlangen*, 91 B.R. 834, 837 (Bkrtcy. N.D.Ill.1988). Courts have established such objective guidelines and have considered these "totality of the circumstances" in determining whether a chapter 11 petition has been filed in "good faith". See, *Matter of Grieshop*, 63 B.R. 657 (N.D. Ind.1986) Where the chapter 11 debtor has but one significant asset secured by one main creditor (e.g. "single asset cases") the "good faith" determination has focused upon whether the filing of the chapter 11 is "consistent with the aims and objectives of bankruptcy philosophy". *In re Victory Construction Co.*, 9 B.R. 549, 558 (Bkrtcy. C.D.Cal.1981) *rev'd on other grounds*, 37 B.R. 222 (9th Cir. BAP 1984).

 Central to the "aims and objectives of bankruptcy philosophy" is whether the debtor has an ongoing business which it intends to reorganize. See, *Matter of Winshall Settlor's Trust*, 758 F.2d 1136, 1137 (6th Cir.1985). What business form does the debtor take? What are the assets of the estate? What income does the debtor produce? Is the income sufficient to sustain operations? What is the debtor's business? How many employees does the debtor have? What is preserved if the debtor is allowed to reorganize? "Resort to the protection of the bankruptcy laws is not proper ... [where] there is no going concern to preserve, there are no employees to protect, and there is no hope of rehabilitation, except according to the debtor's 'terminal euphoria' " *Matter of Little Creek Development Co.*, 779 F.2d 1068, 1073 (5th Cir.1986).[1]

Here, the Debtor is a limited partnership. The only asset of Castleton Associates is the 1265 unit apartment complex. The income produced by the Debtor is the rental income derived by tenants of Lake Castleton Arms Apartments which flows through the management company of First Winthrop and returns to the Debtor in the form of profits, if the income is sufficient. The Debtor does not produce a product. The Debtor did not build and develop the apartment project; rather, the Debtor arrived on the scene after construction was completed, as an investor. The operating income has not been sufficient to pay real estate and personal property taxes due. Repairs and improvements to the complex are estimated at the low end to be $1.7 million. The Debtor itself really has no business; rather, it has contracted out to First Winthrop the everyday duties of maintaining and managing the apartments. So, the Debtor's business is to "keep tabs" on the investments made by the investors while First Winthrop does the actual managing, maintaining, hiring and firing. The Debtor has no employees. All the employees maintaining and managing the complex are First Winthrop employees.

What is preserved if the Debtor here is allowed to reorganize? A reorganization here would not spell preservation of Debtor's employees' jobs. It would provide a "soft landing" for disgruntled investors who now face the reality that their investment has gone sour. Those investors made an informed business judgment and chose to invest their funds on the belief that the apartments would appreciate in value, thus yielding a return on their investment. Also attractive were the tax benefits available to investors at that time. It should be noted that the only economic good produced by this limited partnership has been a 30% tax write-off for its limited partners.

---

**1.** There is a split of authority in single asset/apartment project cases whether the case should be dismissed or whether the debtor should be allowed to proceed to confirmation to present additional evidence of its ability to reorganize. See, *In re MGN Co, III, an Indiana Limited Partnership*, Case No. IP 88–7139 RA V

(Bkrtcy.S.D.Ind.1989); *In re Aztec Company*, 99 B.R. 388 (Bkrtcy.M.D.Tn.1988). This Court recognizes that split of authority and, concludes that, given the totality of the circumstances here, this case should be dismissed at this juncture.

Here, a single-asset debtor has as its predominant and only existing secured creditor one which stands to lose $6 million because of the decline in the value of the project, the reality of the risk. The question becomes "how should the risk be allocated?".

We are dealing with an investment vehicle that was totally disclosed to the investors through the strong statement of potential risks set out in Creditor's Exhibit "R", the prospectus. The investors were totally aware that this project could fail. They were also advised that it could be a success worth over 90 million dollars. Applying the factors considered in whether good faith exists, it is apparent that:

(1) the Debtor is a single asset debtor;

(2) the Castleton Associates chapter 11 was filed after foreclosure proceedings had commenced in state court and on the eve of the appointment of a receiver;

(3) the Debtor has little or no unsecured debt;

(4) the Debtor has no employees;

(5) the value of the sole asset is less than what is owed to Travelers;

(6) this is essentially a two-party dispute between the limited partnership and Travelers;

(7) the Debtor's income is not sufficient to continue the day-to-day operations, and if is sufficient at all, it is because Travelers is not being paid its interest on its mortgage;

(8) the Debtor is not able to meet current expenses including the payment of personal property and real estate taxes.

The effect of the chapter 11 filing here is an attempt to shift the risk to the secured creditor, and as stated before, to give the risk-takers a soft landing on a bad business or investment decision and that has never been the purpose of a chapter 11 reorganization. Chapter 11, whether under the Old Act or under the Code, was not designed to eliminate the pain of risk-taking.

The Castleton Associates acknowledges that had this project been the $90 million success as set forth in the Prospectus, it would have joyfully reaped all the benefits and Travelers would have received only the benefit of its initial bargain, the repayment of its secured indebtedness, with interest.

Now the Debtor is coming to this Court asking that Travelers bear the risk. Travelers would not have shared in the appreciative share but has lost considerably in the depreciation that has taken place due to market conditions.

In reviewing cases of this nature at this stage, it is important that the Court not only consider the position of the Debtor but that the Court consider the consequences to a creditor in a single asset case if the case were allowed to proceed. Travelers bargained for the right to foreclose. Now the Debtors ask that Travelers be forced to forego that right and be required to share in the risk that was accepted by the investors when the investors made a decision to participate in this investment vehicle. The Debtor wants to avoid the consequences of bad judgment and pass the loss on to Travelers.

█ The evidence showed that, while the 1265 unit apartment project has depreciated in value, it appears that the decline in value has bottomed out and that the value and the occupancy rate is on the rise. The consequence of the chapter 11 filings and the plan proposal is to renegotiate this non-recourse loan at the low end of the value scale. Where a chapter 11 debtor has few unsecured creditors, none of which are significant, and one valuable asset on the upswing after bottoming out in value secured by its one major creditor, the filing of the chapter 11 is not within the "aims and objectives of bankruptcy philosophy". It is an attempt to soften the blow of bad business judgment. The purpose of a chapter 11, whether under the Old Act or under the Bankruptcy Code has never been designed to absorb the consequences of risk-taking. And, even though there are no subjective "bad acts" that the Debtor has engaged in, "bad faith is shown if the purpose of a Chapter 11 debtor is to hold a single asset 'hostage' in order to speculate that such asset may increase in value [leading] to recovery of the original investment at the creditor's risk". *Carolin Corporation v. Miller*, 886 F.2d 693, 705 (4th Cir.1989).

Therefore, the Court finds that this chapter 11 proceeding should be dismissed. The motion filed by Travelers was filed with respect to Castleton Associates only, and Castleton Investors, which was initially assigned to another judge in this division, has not been consolidated with this proceeding. Therefore, that case (IP 89–6547 RA B) will not be dismissed.

Travelers in the alternative asks for relief from the automatic stay in its motion. Because the Court finds that this chapter 11 proceeding should be dismissed, the relief from stay portion of Travelers motion is moot.

Accordingly, the Court GRANTS Travelers' motion IN PART and ORDERS that this chapter 11 proceeding be DISMISSED.