**In re THE OPHIR TRUST, Debtor.**

**Bankruptcy No. 90–00642.**

United States Bankruptcy Court,
E.D. Wisconsin.

April 2, 1990.

---

Afton J. Izen, Charles J. Rainey, for debtor.

John Robert Byrnes, Asst. U.S. Trustee.

Kevin J. Sjostrom, for Wauwatosa Sav. and Loan Ass'n.

Robert E. Kuelthau, for Joseph and Gaylene Townsley.

## DECISION

JAMES E. SHAPIRO, Bankruptcy Judge.

### BACKGROUND

The focus of this dispute is upon a huge English Tudor stone mansion at 6454 Washington Circle, Wauwatosa, Wisconsin ("home"). It is located in the Washington Highlands, an area which was recently added to the National Register of Historic Places.

Pending before this court are a motion of the United States Trustee for dismissal and a motion of Wauwatosa Savings and Loan Association for annulment of the automatic

stay with respect to its pending state court mortgage foreclosure on the home. This is a core proceeding pursuant to § 157(b)(2)(A), (G) and (O).

### FACTS

On February 12, 1990, The Ophir Trust ("debtor") filed its petition under chapter 11 of the Bankruptcy Code in the Eastern District of Wisconsin. Its sole asset is the home. The home has a 3–story circular staircase, detached 4–car garage with living quarters, 5 bedrooms and outdoor swimming pool. It is the largest home in the Washington Highlands, containing 8,000–10,000 square feet. Lawrence E. Schoeffler and his former spouse, Marian Schoeffler, while married, purchased the home in 1969 for $89,000. It is presently subject to a mortgage held by Wauwatosa Savings and Loan Association with a present unpaid balance of approximately $275,000, the major debt shown in the schedules. Other debts include outstanding taxes totalling approximately $13,000 due to the IRS and Wisconsin Department of Revenue and outstanding real estate taxes of approximately $36,000 for 1987, 1988 and 1989.

The home was awarded to Mr. Schoeffler as part of a marital property settlement incorporated into the Decree of Dissolution of Marriage between Mr. and Mrs. Schoeffler, dated July 23, 1986, granted by the Superior Court of Maricopa County, Arizona. The marital property settlement provided that, upon the sale of the home, Mr. Schoeffler shall pay $60,000 to Mrs. Schoeffler. Mrs. Schoeffler was given the right to occupy the said home rent-free, but upon payment to her of the $60,000, she must vacate the premises.

On April 14, 1988, the debtor was created by Mr. Schoeffler as a separate entity. Mr. Schoeffler is its sole beneficiary. He and his two sons, Lawrence II and Jason, are its trustees. On June 14, 1988, he transferred title to the home to the debtor for $10. Mr. Schoeffler testified that the purpose of its transfer to the trust was to protect it in the event of any personal liability by him and also to sell it, with the surplus sale proceeds to be used to purchase a commercial building for rental income.

On October 19, 1988, Mr. Schoeffler filed a personal chapter 11 petition in Phoenix, Arizona (Case No. B–88–8399). That case is currently pending before Bankruptcy Judge Robert G. Mooreman. On December 13, 1989, Judge Mooreman decided that the home did not constitute property of Mr. Schoeffler's chapter 11 estate and was therefore not subject to protection of the automatic stay. Judge Mooreman's ruling is on appeal. On Friday, February 9, 1990, Judge Mooreman denied Mr. Schoeffler's motion for a stay pending the appeal, thereby paving the way for a sheriff's sale to be conducted in Milwaukee on the following Monday, February 12, 1990 at 10:00 a.m.

Minutes before the sheriff's sale (more specifically, at 9:54 a.m.), the debtor filed its petition in bankruptcy under chapter 11 in the Eastern District of Wisconsin. The sheriff's sale proceeded, since it was only after the sheriff's sale was held that Wauwatosa Savings and Loan Association learned of the debtor's chapter 11 filing. The highest bidders at the sheriff's sale were Joseph and Gaylene Townsley, who bid $305,000.

Soon after the debtor's chapter 11 filing, the motions by the United States Trustee and Wauwatosa Savings and Loan Association for dismissal and for annulment of the automatic stay, respectively, were filed. The United States Trustee's dismissal motion is predicated upon the following two grounds:

1. The debtor is not eligible to file a chapter 11 petition, and

2. The chapter 11 petition constitutes "an abusive filing."

An evidentiary hearing was held on March 7, 1990 on both motions. Following the taking of testimony and receipt of exhibits, briefs were submitted.

On March 16, 1990, the debtor obtained an offer to purchase the home from Richard and Kathleen Lochrie for $418,000 "contingent upon approval by the courts

that the sheriff's sale is voided." This offer to purchase was made through a real estate broker, Federated Realty Group, which was never appointed by this court to sell the home. The debtor has also filed an application requesting approval of the sale to Mr. and Mrs. Lochrie.

## ELIGIBILITY FOR CHAPTER 11 RELIEF

§ 109(d) of the Bankruptcy Code states that a "person" may be a debtor under chapter 11 of this title. § 101(35) describes a "person" as including a corporation. A corporation, as defined under § 101(8) of the Bankruptcy Code, includes a "business trust." This, in turn, requires the court to determine whether or not the debtor is a "business trust" within the meaning of § 101(8).

There are numerous references throughout the instrument creating The Ophir Trust which refer to the entity being formed as a "common law business trust organization." The trust instrument, when defining the nature of activities to be performed, includes "business projects . . . or other lawful business(es) desired to be engaged in by said trustees." The trustees' authorized duties include the ability to "invest and reinvest the funds of the business trust organization in a manner as will increase the financing rating of the business trust organization." The trustees' powers include the ability to "continue in business . . . extend and establish a line of business in industry or investment and . . . buy, sell and lease land, buy or sell mortgages, buy or conduct mail order business, operate stores, shops, factories, warehouses or other trading establishments or places of business of any kind." All of these provisions in the trust instrument are consistent with a business trust.

Nonetheless, saying something and doing something can be two entirely different things. The debtor has never engaged in any form of business. The record reflects that Mr. Schoeffler's son, Lawrence II, and the wife and child of Lawrence II live in the home, at a rental of $250 per month, and that, so long as Marian Schoeffler re-

sides in the home, Mr. Schoeffler is relieved from paying to her $1,317 per month under the property settlement. These facts fail to persuade this court that the debtor is a business trust. The $250 monthly rental from Lawrence Schoeffler II is extremely nominal in view of the nature of the leased premises. It does not even cover the monthly utilities which average $750. In addition, Mr. Schoeffler personally pays all insurance premiums and maintenance costs for the home.

The casual method of handling the receipts and disbursements pertaining to the home is more typical of a nonbusiness trust than of a business trust. The Ophir Trust has never maintained a separate bank account. Rents are paid in cash to Mr. Schoeffler. The utilities and insurance covering the home are in the name of Mr. Schoeffler. The debtor's assertion that, following a sale of this home, it intends to purchase a commercial building and receive rental income is unconvincing in establishing a business purpose because it is too speculative. The history of the trust's operation since its inception persuades this court that it was never intended to be a business trust.

The court in *In re Medallion Realty Trust,* 103 B.R. 8 (Bankr.D.Mass.1989), observed that "the decisions are sharply, and perhaps hopelessly, divided on the meaning of 'business trust.'" The court noted some cases hold that if the trust is deemed a corporation for income tax purposes it is a business trust (citing *Morrissey v. Commissioner,* 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263 [1935] ), while other cases, including *In re Dreske Greenway Trust,* 14 B.R. 618 (Bankr.E.D.Wis.1981), look to the trust's operations as the key factor in making this determination. *Medallion Realty Trust* concluded that, based upon the particular facts, the trust in question had been created for the purpose of transacting business and was therefore eligible for chapter 11 relief. In *In re Dolton Lodge Trust No. 35188,* 22 B.R. 918, 925 (Bankr.N.D.Ill. 1982), the court concluded that, in examining whether or not a debtor is an eligible entity for chapter 11, the focus should not

be on what the debtor is called but rather on what the debtor actually is and the purpose it has been created to carry out.

The debtor's reliance upon *In re Dreske Greenway Trust*, 14 B.R. 618 (Bankr.E.D. Wis.1981), and *In re Tru Block Concrete Products, Inc.*, 27 B.R. 486 (Bankr.S.D.Cal. 1983), is misplaced. In *Dreske*, the court did hold that the particular entity involved was a business trust. However, the facts in *Dreske* and in the case at bar are markedly different. In *Dreske*, the trust owned a hotel, bar and restaurant and was actively engaged in business operations. That is not the case here. The Ophir Trust was never engaged in any business activity. It has never owned anything other than a one-family residential dwelling incapable of being operated as a business. In *Tru Block*, a trust was created for the specific purpose of liquidating the assets of a predecessor corporation. The court found that, because the debtor was in fact "performing the final business of its predecessor corporation," it was doing business for California tax purposes and, therefore, constituted a business trust. That situation bears no resemblance to the facts before this court. *Tru Block* recognized, and this court agrees, that, to ascertain whether a trust in fact is a business trust, the court must examine the activities actually taking place.

There is an old adage that, "If it walks like a duck, quacks like a duck and looks like a duck, it has got to be a duck." *In re Charnock*, 97 B.R. 619 (Bankr.M.D.Fla. 1989); *In re Glenn Electric Sales Corp.*, 89 B.R. 410 (Bankr.D.N.J.1988); *In re Kelton Motors, Inc.*, 109 B.R. 641 (Bankr.D. Vt.1989). Here, The Ophir Trust may look like a duck, but it neither walks nor quacks like a duck. Based upon the history of the debtor's operations, the court concludes that it is not a business trust within the meaning of § 101(8) of the Bankruptcy Code and is therefore not eligible for chapter 11 relief.

## CAUSE FOR DISMISSAL

For the sake of argument, even if the debtor is eligible to file under chapter 11, a separate ground exists to support dismissal of this case under 11 U.S.C. § 1112(b). *In re Randy Homes Corp.*, 86 B.R. 259 (Bankr.M.D.Fla.1988), asserts, as a universally recognized principle, that it is appropriate to dismiss a chapter 11 bankruptcy petition "for cause" if the petition was filed in bad faith.

■ The factors to be taken into consideration in determining lack of good faith have been delineated in many cases. *In re Randy Homes Corp.; Matter of Little Creek Development Co.*, 779 F.2d 1068 (5th Cir.1986); *Matter of Oakbrook Village, Inc.*, 108 B.R. 838 (Bankr.S.D.Ga.1989); *In re Lange*, 75 B.R. 154 (Bankr.N.D.Ohio 1987); *Matter of Winshall Settlor's Trust*, 758 F.2d 1136 (6th Cir.1985); *In re Family Health Services, Inc.*, 104 B.R. 279 (Bankr. C.D.Cal.1989); *In re Castleton Associates Limited Partnership*, 109 B.R. 347 (Bankr. S.D.Ind.1989). They include:

1. Lack of reasonable probability of an effective reorganization.
2. The debtor has only one asset.
3. The debtor has a limited number of employees or no employees.
4. The inability of the debtor to meet current expenses.
5. The debtor has relatively few unsecured claims, which claims are small in relation to those of a secured creditor or creditors.
6. The asset of the debtor is subject to a pending foreclosure action as a result of arrearage on indebtedness.
7. The timing of the debtor's filing evidences an attempt to delay or frustrate legitimate efforts of secured creditors to enforce their rights under state law.
8. The debtor's financial problems involve largely a dispute between the debtor and the secured creditor which can be resolved in a pending state court action.

■ All of these badges of bad faith are present in the case at bar, even though all need not be present in order to find lack of good faith. The debtor has never carried on any business operations since its cre-

ation. Its only asset is the home. It has no employees. Whatever income is being received by the debtor is insufficient to cover the continuing costs of maintenance, insurance, taxes, utilities and other incidental costs of the home. Marian Schoeffler's claim arises against Mr. Schoeffler out of a property settlement in a divorce case, not against the debtor. Whether she has a valid lien against the home is unclear. Except for Wauwatosa Savings and Loan Association's claim, the only other claims involved in this case are federal and state tax claims, unpaid real estate taxes and a small unsecured claim in the amount of $624. These claims, as compared to the claim of Wauwatosa Savings and Loan Association, are minimal. The home is the subject of a pending mortgage foreclosure suit, and the debtor's financial problems are clearly due to its dispute with Wauwatosa Savings and Loan Association. This chapter 11 case was filed literally a matter of minutes before the sheriff's sale.

Many of the objections raised by the debtor pertain to the validity of the mortgage foreclosure suit itself, including its claim of lack of proper notification to all parties. These are matters of state law which should more appropriately be addressed to the state court judge handling the foreclosure suit. The debtor still has an opportunity to be heard at the confirmation hearing in the state court. In *In re Lynch*, 12 B.R. 533 (Bankr.W.D.Wis.1981), Judge Martin declared that, under Wisconsin law, mortgagors retain an equitable interest (i.e., the right to redeem) until a foreclosure sale is confirmed pursuant to Wis.Stats. 846.165. *See also Allen v. Elderkin*, 62 Wis. 627, 22 N.W. 842 (1885); *Shuput v. Lauer*, 109 Wis.2d 164, 325 N.W.2d 321 (1982); *Gerhardt v. Ellis*, 134 Wis. 191, 114 N.W. 495 (1908). In *In re Mill–Craft Building Systems, Inc.*, 57 B.R. 531 (Bankr.E.D.Wis.1986), this court held that a mortgage foreclosure suit presents peripheral, nontraditional bankruptcy issues which cannot be fully and completely adjudicated by the bankruptcy court. What exists in this case is a two-party dispute. This court shall neither act as a mortgage foreclosure court nor as an appellate tribunal over the state court.

After reviewing all of the circumstances involved, there is cause for dismissal within the meaning of § 1112(b). Chapter 11 is intended to assist financially distressed businesses by providing temporary relief to them while they attempt to return to a solvent and healthy operation. *Matter of Winshall Settlor's Trust*, 758 F.2d 1136, 1137 (6th Cir.1985). *See also Matter of Madison Hotel Associates*, 749 F.2d 410, 426 (7th Cir.1984). Chapter 11 was never intended for use as an adjustment of a mortgage debt on a single-family residence. *In re Ponn Realty Trust*, 4 B.R. 226 (Bankr.D.Mass.1980).

### EFFECT OF POST–PETITION SHERIFF'S SALE

The February 12, 1990 sheriff's sale is void, unless the automatic stay is annulled. The Seventh Circuit in *Matter of Allen*, 816 F.2d 325 (7th Cir.1987), declared that a foreclosure sale conducted one day after the filing of a chapter 7 petition without first obtaining relief from the automatic stay was void. *See also In re Demos*, 85–C–1225 (E.D.Wis. July 27, 1987), where it was held that actions taken in violation of the automatic stay are void. Moreover, the Wisconsin Court of Appeals in *Security Savings and Loan Association v. Farnworth*, 81–CV–572 (Wis.Ct.App.1983), held that orders issued in violation of the automatic stay were void.

Wauwatosa Savings and Loan Association's action in proceeding with the sheriff's sale after the filing of the chapter 11 was without knowledge by it of such filing. These circumstances warrant an annulment of the stay. Annulment of the stay, however, shall not preclude the state court from ordering another sheriff's sale.[1]

### CONCLUSION

The automatic stay is annulled, and this case shall then be dismissed. In view of

---

1. This is not intended to infer one way or the other if another sheriff's sale should be held. It only means that the state court has discretion to do so if it deems it appropriate.

these rulings, the debtor's application to sell the home is moot.

This decision shall stand as and for findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052.