**PLEASANT POINTE APARTMENTS, LTD., and Park Towers Apartments, Ltd., Appellants,**

v.

**KENTUCKY HOUSING CORPORATION, Appellee.**

**Civ. A. No. 91–0448–L(CS).**

United States District Court, W.D. Kentucky, at Louisville.

May 15, 1992.

W. Robinson Beard, Robert G. Breetz, I. Rose Duggan, Stites & Harbison, Louisville, Ky., for appellants.

Eric L. Ison, John W. Ames, Michael R. Engleman, Greenebaum, Doll & McDonald, Louisville, Ky., for appellee.

## MEMORANDUM OPINION

SIMPSON, District Judge.

This matter is before the Court by virtue of an appeal from an order of the Bankruptcy Court dismissing, *sua sponte*, the appellants' Chapter 11 petitions for lack of good faith. This matter is also before the court on the motion of appellee to dismiss the appeal upon the ground that appellants were dilatory in obtaining the transcript necessary for briefing and review of the bankruptcy court decision. The court finds nothing egregious in appellants' actions with respect to obtaining the transcript and will therefore deny the motion to dismiss and address the merits of the appeal below.

**I.**

In 1985, the Kentucky Housing Corporation ("KHC"), appellee, issued bonds for the construction of low-income housing projects. The Pleasant Pointe Apartments, Ltd. and Park Tower Apartments, Ltd. ("the Partnerships"), appellants, are two limited partnerships formed for the purpose of taking advantage of the 1985 KHC bond issue. In 1986, the Partnerships completed two housing projects, one in Radcliff and the other in Henderson, Kentucky, financed with KHC money and mortgaged to KHC under first and second mortgages. [Exhibits 3A, 3B, 3D, 3E, 4A, 4B, 4D, 4E].[1]

By 1987, it became apparent that the Partnerships' projects were not producing sufficient income to satisfy the liens or even the interest accruing on the mortgages KHC held. Through a broker, KHC contacted Associated Financial Corporation ("AFC"), a California entity owning approximately three hundred housing projects throughout the United States, to see whether it was interested in becoming involved in the Partnerships' projects. Despite knowing about the Partnerships' poor financial conditions, AFC was interested in becoming involved because it wanted to obtain certain tax credits from KHC. In a letter dated November 2, 1987, AFC offered to make a million dollar capital contribution to the Partnerships over a five year period in exchange for $3.2 million dollars in tax credits over a ten year period. [Exhibit 8]. The capital contribution was for mortgage interest arrearages as they existed at closing and for supplementation of the Partnerships' cash flow over the following four years.

By letter dated November 16, 1987, KHC notified AFC that it would accept the offer consistent with the terms outlined by AFC. [Exhibit 9]. On November 24, 1987, the parties closed the deal and executed a letter agreement. The relevant terms of that agreement provided for: (1) payment to KHC of $200,000 ($100,000 per partnership) at closing toward mortgage interest arrear-

---

1. The exhibits referred to herein are the exhibits introduced at the January 1992 bankruptcy court hearing.

ages; (2) receipt by KHC, within 10 days after closing, of notes for $200,000 payable to KHC in April of 1989, 1990, 1991, and 1992; (3) modification of the first and second mortgages to provide, *inter alia*, for the payments to equal the net operating cash flow increased by the capital contributions and for reduced interest rates;[2] and (4) appointment of AFC as managing partner of the Partnerships' projects and payment to AFC of a management fee.

Although KHC received the initial $200,000 required capital contribution at the closing, it did not receive the capital contribution due in April 1989 and 1990. KHC notified the Partnerships that its failure to make those contributions, as well as other acts, constituted a default under the terms of first and second mortgages and mortgage modification agreements. On May 30, 1990, KHC initiated foreclosure actions in Hardin and Henderson Circuit Courts. In response to the state foreclosure actions, the Partnerships admitted not paying the $200,000 annual capital contribution in April 1989 and 1990, but claimed that failure was not a default according to the correct interpretation of the mortgages and modification agreements.

In October of 1990, the Partnerships filed for bankruptcy under Chapter 11, 11 U.S.C. §§ 1101–1174. In December of 1990, KHC filed motions for relief from the automatic stays imposed in connection with those Chapter 11 filings, claiming that the Partnerships were in default and KHC's interests were not being adequately protected.

In January of 1991, the bankruptcy court conducted a four day hearing on KHC's motions to lift the automatic stays. At the hearing, the bankruptcy court heard testimony from seven witnesses and considered over one hundred exhibits. On February 5, 1991, the Partnerships filed disclosure statements and proposed plans of reorganization with the bankruptcy court. On February 15, 1991, the bankruptcy court orally delivered a decision after the hearing on the motions for relief from the automatic stays. In that opinion, the bankruptcy court concluded that the Partnerships had not filed their Chapter 11 petitions in good faith and dismissed those petitions *sua sponte*.[3] The Partnerships appeal that decision.

## II.

The determinative issues on appeal are (1) whether the bankruptcy court erred in *sua sponte* dismissing the Partnerships' Chapter 11 petitions for lack of good faith and (2) if not, whether the bankruptcy court erred by finding that the Partnerships' Chapter 11 petitions were not filed in good faith.[4] These issues involve review of both questions of law and fact.

The first issue involves review of the bankruptcy court's conclusion of law which this Court must review de novo. *In re Vause*, 886 F.2d 794 (6th Cir.1989); *In re Van Rhee*, 80 B.R. 844 (W.D.Mich.1987). The second issue involves review of the bankruptcy court's factual findings which this court may not set aside unless they are clearly erroneous. *See, e.g., In re Caldwell*, 851 F.2d 852 (6th Cir.1988). The burden of proving that the bankruptcy court's findings are clearly erroneous is on the Partnerships, the parties seeking review. *See, e.g., In re Browning*, 31 B.R. 995 (S.D.Ohio 1983).

## A.

Section 1112(b) of the Bankruptcy Code provides for the dismissal or conversion of a Chapter 11 petition for cause "on request of a party in interest or the United States trustee." 11 U.S.C. § 1112(b). The

---

**2.** The mortgage modifications subsequently were executed and recorded in December 1987. [Exhibits 3G, 3H, 4G, 4H].

**3.** The factual findings supporting the conclusion that the petitions were not filed in good faith are discussed in this Memorandum on pages at 832–33.

**4.** The Partnerships have identified seven separate issues for appeal, six in their notice designating the issues and three in their appellate brief. These separately stated issues are subsumed by the two stated by the Court above and, therefore, shall not be addressed individually.

legislative history of section 1112(b), as well as the plain language of that section, indicates that Congress' intent was to restrict courts from dismissing or converting Chapter 11 cases on their own initiative. The House version of section 1112(b), which Congress ultimately enacted, made a bankruptcy court's dismissal or conversion of a Chapter 11 case contingent upon the request of a party in interest or trustee. H.R.Rep. No. 8200, 95th Cong., 1st Sess. (1977). By contrast, the Senate version, which Congress rejected, expressly gave a bankruptcy court the power to dismiss or convert "on its own motion." S.Rep. No. 2226, 95th Cong., 1st Sess. (1977).

The statements of two Congressmen who were sponsors of the Bankruptcy Code further reflect the legislative intent behind enactment of the House version of section 1112(b).

> The phrase 'on request of a party in interest' or a similar phrase, is used in connection with an action that the court may take in various sections of the Code. *The phrase is intended to restrict the court from action sua sponte.* Rules of bankruptcy procedure or court decisions will determine who is a party in interest for the particular purpose of the provision in question, but *the court will not be permitted to act on its own.*

124 Cong.Rec. 32,393 (1978) (statement of Congressman Edwards); 124 Cong.Rec. 33,393 (1978) (statement of Senator DeConcini) (emphasis added).

Despite the clear language and legislative history of section 1112(b), courts differed over the construction and effect of that statute. Some courts concluded that section 1112(b) absolutely prohibited bankruptcy courts from dismissing or converting *sua sponte. See, e.g., In re Gusam Restaurant Corp.,* 737 F.2d 274 (2d Cir. 1984). However, some courts concluded that section 1112(b) did not prohibit bankruptcy courts from exercising an inherent power to make *sua sponte* dismissals and conversions where necessary to control their dockets and perpetuate proper use of the bankruptcy mechanism. *See, e.g., In re Ray,* 46 B.R. 424, 426 (S.D.Ga.1984); *Mat-*

*ter of Century City,* 8 B.R. 25 (D.N.J. 1980). Under this view, bankruptcy courts could *sua sponte* dismiss or convert Chapter 11 petitions where there was evidence of bad faith on the part of the petitioners. *In re Moog,* 774 F.2d 1073, 1077 (11th Cir. 1985); *In re Clark,* 107 B.R. 376, 377 (S.D.Fla.1988). *Cf. In re Zick,* 931 F.2d 1124, 1129 (6th Cir.1991) (*quoting In re Jones,* 114 B.R. 917, 925 (Bankr.N.D.Ohio 1990) (" '[A]lthough the jurisdictional requirement of good faith is not explicitly stated in the statute, it is inherent in the purpose of bankruptcy relief.' ").

In 1986, Congress amended section 105(a) of the Bankruptcy Code and resolved the uncertainty over the construction and effect of section 1112(b) by expressly recognizing the bankruptcy courts' inherent powers to monitor and police proper use of the bankruptcy laws and mechanisms. Congress amended section 105(a) by adding the following sentence:

> No provision of this title providing for the raising of an issue by a party shall be construed to preclude the court from, *sua sponte,* taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). According to this additional sentence, the fact that section 1112(b) requires a party or trustee to request dismissal or conversion does not preclude bankruptcy courts from evaluating a Chapter 11 petition and, on its own initiative, dismissing or converting that petition for cause. *In re Clark,* 107 B.R. 376 (S.D.Fla.1988); *In re Miracle Church of God in Christ,* 119 B.R. 308 (Bankr. M.D.Fla.1990). *See also* 5 Collier on Bankruptcy 1112.03[4] (1992).

Contrary to the Partnerships' contention, *In re Toibb,* —— U.S. ——, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991) does not alter this interpretation of section 105(a) or the power of bankruptcy courts to dismiss *sua sponte. Toibb* addressed only the issue of whether an individual who had no ongoing business could file for relief under Chapter 11 and held that individual debtors could

file for relief under that Chapter. *Toibb* did not address the issue of the bankruptcy courts power to dismiss *sua sponte* or place any new limitations on that power.

Thus, the bankruptcy court did not err in concluding that it had the authority to dismiss the Partnerships' Chapter 11 petitions for cause on its own initiative, without a specific request to do so by KHC.[5] Furthermore, the bankruptcy court did not err in concluding that a lack of good faith in the filing of those petitions constituted cause for dismissal of those petitions. *Matter of Winshall Settlor's Trust*, 758 F.2d 1136, 1137 (6th Cir.1985) ("[A]n implicit requirement to the right to file is 'good faith' on the part of the debtor, the absence of which may constitute cause for dismissal under § 1112(b)."). *See also Matter of Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir.1986).

### B.

■ The determination of whether a debtor has filed in good faith depends upon the bankruptcy court's "on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities." *Id.* at 1072. In Chapter 11 cases, one particular area of concern has been "single asset hostage" cases, where there is evidence that the debtor's purpose in filing is not to reorganize, but to hold a single asset hostage. *See, e.g., Carolin Corp. v. Miller*, 886 F.2d 693, 705 (4th Cir.1989); *Matter of Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir.1986).

### i.

■ The following factors are indicative of a bankruptcy petition filed in bad faith for the purpose of holding a single asset hostage:

(1) the debtor has only one asset;

(2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;

(3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;

(4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;

(5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;

(6) the debtor has little or no cash flow;

(7) the debtor can't meet current expenses including the payment of personal property and real estate taxes; and

(8) the debtor has no employees.

*See, e.g., In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir.1988); *Matter of Little Creek Dev. Co.*, 779 F.2d 1068, 1072–73 (5th Cir.1986); *In re Plummer*, 115 B.R. 371, 373 (Bankr.M.D.Fla.1990); *In re Castleton Assoc. Ltd. Partnership*, 109 B.R. 347, 351 (Bankr.S.D.Ind.1989).

### ii.

The bankruptcy court found most of these factors present in the Partnerships' bankruptcy cases. *First,* the bankruptcy court found that the Partnerships are single asset debtors and have no employees. These facts are admitted in the disclosure statements that the Partnerships filed with the bankruptcy court.

*Second,* the bankruptcy court found that the claims of the Partnerships' unsecured creditors were small in relation to the claims of their secured creditor, KHC. According to the Partnerships' disclosure statements, Pleasant Pointe's secured debt is $4,290,000, while its only other debts are $19,506 in general unsecured debt and $63,805 in property taxes, half of which were not due at the commencement of its Chapter 11 case. Park Towers' secured debt is $4,290,000, while its only other debts are $13,602 in general unsecured debt and $7033 in property taxes, none of which

---

**5.** Although KHC made no specific request for dismissal, it request "any other relief to which it may appear entitled" in its motion for relief from the automatic stay. The pleadings filed in connection with that motion raised the issue of good faith and put the Partnerships on notice that their good faith was at issue.

were due at the commencement of its Chapter 11 case.

*Third,* the bankruptcy court found that: (1) the Partnerships' single assets are the subjects of state foreclosure actions as a result of alleged arrearages and defaults; (2) the Partnerships' Chapter 11 petitions were filed after initiation of the state foreclosure actions;[6] and (3) this dispute is essentially a two party dispute between KHC and the Partnerships which can be resolved in those state foreclosure actions. Several pages of the disclosure statements are devoted to outlining the claims made in the state foreclosure actions and the Partnerships' responses to those claims. Moreover, most of the Partnerships' efforts in the Bankruptcy court hearing on the motions to lift the automatic stays and on appeal have been directed toward resolution of the contractual issues raised in the state foreclosure actions, rather than toward any matter uniquely suited for determination in a bankruptcy forum.

*Fourth,* the bankruptcy court found that the Partnerships have insufficient cash flow to cover their daily operating expenses or to pay even the interest on the KHC mortgages. In fact, the bankruptcy court found that the Partnerships have "nothing to reorganize." [Transcript of Decision, p. 23]. These findings were made with the benefit of the Partnerships' proposed plans of reorganization.

These factual findings, all of which are readily evident from the Partnerships' disclosure statements, are not clearly erroneous and we will accept and adopt them. The existence of these facts adequately supports the bankruptcy court's ultimate finding that that the Partnerships did not file their Chapter 11 petitions in good faith, but with the intent of delaying or frustrating KHC's legitimate efforts to enforce its rights. Therefore, we will affirm the bankruptcy court's dismissal of the Partnerships' Chapter 11 petitions for lack of good faith.

In addition to the findings discussed above, the bankruptcy court addressed the

merits of the contractual issues raised in the state foreclosure actions and found that the Partnerships were in default on their mortgages. We have determined that the bankruptcy court did not err in dismissing the Partnerships' Chapter 11 petitions. It is therefore unnecessary to review the bankruptcy court's findings concerning interpretation of the agreements between the Partnerships and KHC.

A separate order shall accompany this Memorandum Opinion.

### ORDER

This matter having come before the court on appeal from the United States Bankruptcy Court for the Western District of Kentucky, and for the reasons set forth in the memorandum opinion entered herein this date, and the court being otherwise sufficiently advised, IT IS HEREBY ORDERED AND ADJUDGED that:

(1) the motion of appellee, the Kentucky Housing Corporation, to dismiss is DENIED, and

(2) the bankruptcy court's judgment dismissing appellants' Chapter 11 cases is AFFIRMED.

IT IS SO ORDERED.

---

**6.** KHC claims that the Partnerships waited to file for bankruptcy until KHC was on the verge of filing motions for summary judgment in the state foreclosure actions.