**In re Christopher K. EVANS, Deirdre B. Evans, Debtors.**

No. 7–03–01742–WSA–13.

United States Bankruptcy Court,
W.D. Virginia,
Roanoke Division.

Feb. 26, 2004.

John M. Lamie, Abingdon, VA, for Debtors.

## *MEMORANDUM DECISION*

WILLIAM F. STONE JR., Bankruptcy Judge.

This case raises a number of interesting and challenging issues concerning the right of bankruptcy debtors, who have originally filed under Chapter 7, to convert their case to Chapter 13 and to obtain confirmation of a Plan over the determined opposition of the Chapter 7 Trustee, who contends that their actions have been taken in bad faith. For the reasons stated in this Memorandum Decision, the Court denies the Trustee's Motion to convert the case back to Chapter 7, denies the Trustee's Application for compensation for the services he has provided in the case, and confirms the Debtors' Chapter 13 Plan.

## *CASE HISTORY*

Christopher and Deirdre Evans, the Debtors, filed in this Court their Chapter 7 petition on April 25, 2003. Michael L. Shortridge, Esq. was appointed as the Chapter 7 Trustee and very promptly began a vigorous exercise of his duties as such. He demanded that various docu-

ments relating to the Debtors' assets and financial condition be made available to him. He also obtained information from creditors. As a result he learned, among other things, that the Debtors' partially constructed residence was subject to an outstanding mortgage debt payoff of approximately $210,000 as of the filing date rather than the $255,000 amount reported on the bankruptcy schedules, and that they were entitled to income tax refunds far exceeding the $500 amount listed in the bankruptcy schedules. He next demanded on May 3 that the Debtors deliver to his office on the following Monday, May 5, a Dodge Durango motor vehicle which Mrs. Evans used to provide transportation to her job as a nurse in Morganton, North Carolina, and the keys to property described as the "rental house". On May 9 he filed a motion to employ Larry W. Akers, t/a Southeast Recovery, to assist him to liquidate assets of the estate. On May 10 he demanded that the Debtors turn over to him the keys to both houses and that they vacate the premises with the admonition not to remove anything other than furnishings and clothing. On May 14 he filed a motion to employ himself and his firm as counsel for the Trustee. Orders granting the employment motions were entered by this Court on May 27 and May 28. On May 29 Mr. Shortridge filed another application to employ Jack Reynolds, Realtor, to provide services to the estate relating to the sale of the "rental house".

On June 4 the Debtors filed a motion to convert their case to Chapter 13 and filed a proposed Chapter 13 Plan. Pursuant to this motion the Court on June 9 entered an order converting the case to Chapter 13 and among other things provided that the "trustee or any other party entitled to compensation may within thirty (30) days ... file an application for compensation and reimbursement of expenses." Because the case was converted to Chapter 13 prior to the originally scheduled date for the "341 meeting", the Chapter 7 meeting of creditors never occurred and the Chapter 13 "341 meeting" was scheduled for July 9. The latter meeting did not actually take place on that date and was continued to August 15. On July 9 Mr. Shortridge filed a Motion to Reconvert or Reconsider Order of Conversion and a Motion for Allowance of Administrative Expense. The grounds of the former motion are that the Debtors' bankruptcy schedules contained "intentional and material representations", "the Debtors repeatedly failed to turn over assets and information requested by the Chapter 7 Trustee" and "attempted to hinder, delay and defraud the Chapter 7 Trustee and the creditors", and therefore the "Debtors have not acted in good faith". The latter motion sought compensation in the amount of $3,442 [1] and reimbursement of expenses of $78.92. Of these amounts $2,684 worth of compensation and $71.84 of expenses were rendered or incurred prior to the June 9 conversion of the case and $768.00 worth of compensation and $7.08 of expenses were rendered or incurred on or after such date. On July 29 Mr. Shortridge in his asserted capacity as "the Chapter 7 bankruptcy trustee for the estates of Christopher K. Evans and Deirdre B. Evans" filed an Objection to confirmation of the Debtors' proposed Chapter 13 Plan. This Objection incorporated by reference the allegations contained in Mr. Shortridge's previously filed motions and further asserted that the Chapter 13 Plan should not be confirmed because it did "not propose to pay the administrative expense claimed by Trustee Shortridge".

---

1. The Court's review of the itemized statements indicates that the correct total is $3,452.00 rather than $3,442.00 as requested in the Motion.

On August 28 the Debtors filed an amended Chapter 13 Plan which, as a result of clerical error, was inadvertently initially docketed in another case. On September 2, 2003 the Debtors filed amended schedules materially different than the ones originally filed.[2] The original scheduled confirmation hearing for September 3 was commenced but was continued due to the intervening filing of the amended Plan and all objections were continued to the new confirmation hearing date for the amended Plan. A new confirmation hearing was held on October 22 but was continued to November 19 to allow the parties to file briefs upon the Debtors' objections to (i) the standing of the former Chapter 7 Trustee to maintain a motion to reconvert the case to Chapter 7, and (ii) the allowability of an administrative expense claim by a Chapter 7 Trustee who has not actually recovered or sold assets of the estate and has not disbursed any funds to creditors or to the Chapter 13 Trustee. On October 29 "Chapter 7 Trustee" Shortridge filed a new Objection to the amend-

2.  The differences between the two sets of schedules can be summarized as follows:

| Asset Values | Original | Amended |
|---|---|---|
| Real Property | $ 388,000 | $ 350,000 |
| Personal Property | 39,179 | 45,091 |
| Subtotal | $ 427,179 | $ 395,091 |
| | | |
| **Debts** | | |
| Secured: | | |
| Bank of Marion | $ 25,000 | $ 23,915 |
| Four Leaf Financial Corp. | 255,000 | 210,173 |
| GMAC | 8,000 | 6,882 |
| Highlands Union Bank | 55,000 | 55,563 |
| Total Secured Debt | $ 343,000 | $ 296,533 |
| | | |
| Priority Unsecured: | $ 66,000 | $ 54,190 |
| General Unsecured: | | |
| Undisputed, Liquidated & Non–Contingent | 750,649* | 64,011* |
| Disputed, Unliquidated and/or Contingent | 660,832* | 1,347,470* |
| Total Priority and General Unsecured Debt | $1,477,481 | $1,465,671 |

*The difference in these figures is accounted for by the shift of a debt to The Mountbatten Surety Company, Inc. in the amount of $686,638 from undisputed and non-contingent in the original Schedule F to both contingent and disputed in the amended Schedule F. This debt is by far the largest obligation in the Debtors' schedules. Upon inquiry by the Court as to the basis for the change in the listing of the nature of this debt, Debtors' counsel has explained that this debt is for a surety bond provided by Mountbatten to Evans Construction Services, Inc. and that it was always his intention and that of his clients to list this debt as contingent. The amount shown was the full amount of the bond although the construction company had completed "85 to 90 percent of the work on that job." The Court accepts this explanation and notes that a similar debt to National Grange Mutual Insurance Co. was listed as contingent. Without deciding whether or not a debt of this kind upon a personal guaranty executed by the Debtors is contingent within the meaning of 11 U.S.C. § 109(e), the debt is also listed as disputed. Furthermore, based on the explanation provided by counsel, the amount of any actual liability to Mountbatten appears at this point to be unliquidated.

| | | |
|---|---|---|
| Household Income (Sch. I) | $5,380 | $6,092 |
| Household Expenses (Sch. J—not amended) | | |
| | 5,105 | 5,105 |
| Monthly Disposable Income | $ 275 | $ 987 |
| (Difference of Above Figures) | | |

ed Plan and added to his previously stated grounds the objection that the proposed Plan would not result in a distribution to creditors equal to what they would receive in a Chapter 7 liquidation of assets and therefore violated 11 U.S.C. § 1324(a)(4). Counsel for the Debtors and Mr. Shortridge filed their respective briefs addressing the issues raised at the October 22nd confirmation hearing. The amended Chapter 13 Plan and the pending Motions came on for further hearing on November 19. At that time the Court had not been able to give full consideration to the arguments of the respective parties and allowed Mr. Shortridge, over the objection of the Debtors, to participate in the confirmation hearing and be heard on his Objection to confirmation.

Mr. Shortridge mainly disputes the Debtors' good faith based on inaccuracies in their schedules, principally the listing of the construction loan deed of trust debt as $255,000, the maximum amount which could have been advanced on the loan, rather than the correct payoff of approximately $210,000, and the incorrect listing of the Debtors' 2002 tax refund as $500 rather than the amounts shown on their tax returns and subsequently actually received by them of $5,718 Federal, $2,180 Virginia, and $ 924 North Carolina, an aggregate total of $ 8,822. He has asserted that the Debtors were attempting to mislead the Court and their creditors as to the facts of their financial condition and has contended that the Debtors filed schedules representing that they had no equity in their property available to creditors and that the case was noticed as a "no asset" case. Actually neither of these contentions is correct. The Debtors' petition indicated that assets should be available to make a distribution to creditors, their schedules did reflect the existence of equity in some of their property, and the case was noticed to creditors as an asset case.

It can be seen, therefore, that the Chapter 7 Trustee as well as the Debtors can be demonstrated to have made inaccurate representations to the Court in this case.

## QUESTIONS PRESENTED

The issues presented in the matters before the Court may be summarized as follows:

1. Did the Debtors have a right to convert their case from Chapter 7 to Chapter 13?

2. Does the former Chapter 7 Trustee in a case which has been converted to Chapter 13 by the Debtors pursuant to 11 U.S.C. § 706(a) have standing to object to such conversion or prosecute an objection to confirmation of the Debtors' proposed Chapter 13 Plan and a motion to convert the case back to Chapter 7?

3. Does the Chapter 7 Trustee who has made no distributions to creditors or to a successor Trustee and has not turned over any property to a successor trustee have any claim for the value of his services rendered either prior to or following the Debtors' exercise of their right pursuant to 11 U.S.C. § 706(a) to convert their case to Chapter 13?

4. Does the former Chapter 7 Trustee have any claim against the Chapter 13 estate for any expenses incurred by him while serving as Chapter 7 Trustee or after the conversion to Chapter 13?

5. If the Trustee is entitled to an allowance of either compensation or reimbursement of expenses against the bankruptcy estate, does this accord him standing as a party in interest to object to confirmation of the Chapter 13 Plan and move to reconvert the case to Chapter 7?

6. Even if the Chapter 7 Trustee lacks standing, may the Court consider the issues raised by such Trustee in determining

whether the proposed Chapter 13 Plan complies with the confirmation requirements of 11 U.S.C. § 1325(a)?

7. Have the Debtors satisfied their burden of proving by a preponderance of the evidence that their proposed Chapter 13 Plan fulfills the requirements of 11 U.S.C. § 1325(a)?

8. Does cause exist for the conversion of the case back to Chapter 7 pursuant to 11 U.S.C. § 1307(a)?

### FINDINGS OF FACT

There are four principal assets to which the parties have given their chief attention, (1) a 2001 Dodge Durango vehicle, (2) the rental house, (3) the residence under construction, and (4) the 2002 tax refund. The Dodge Durango was (i) valued at $18,000, (ii) subject to a $25,000 debt to Bank of Marion the payment of which was secured by a first lien on the vehicle and a second deed of trust against the rental house property, and (iii) claimed as exempt in Schedule C to the extent of $13,500 of its value. The rental house was (i) valued at $138,000 in the original schedules and $100,000 in the amended schedules, (ii) subject to a $55,000 debt secured by a first deed of trust to Highlands Union Bank and the previously noted second deed of trust to Bank of Marion, and (iii) not claimed as exempt in Schedule C. The sale of this property for $100,000 was authorized by the Court on November 20, 2003, during the Chapter 13 phase of this case, with the net proceeds after selling expenses and payment of applicable real estate taxes and secured liens to be paid over to the Chapter 13 Trustee pursuant to the terms of the proposed Plan. The third asset, the residence under construction, was (i) valued at $250,000 in the original and amended schedules, (ii) sub-

ject to a deed of trust in favor of Four Leaf Financial Corporation securing a debt listed as $255,000 in the original schedules and $210,173 in the amended version, and (iii) not claimed as exempt in Schedule C. Although a copy of the Four Leaf Financial deed of trust was not introduced into evidence and has not been filed otherwise in the Court's file, Mr. Evans testified that $255,000 was the maximum amount which could be advanced pursuant to such deed of trust and that by the date of the bankruptcy filing, regular monthly loan amortizing payments had to be paid based on such maximum amount. (T.38) He testified that was the reason he had listed the secured debt against such property at $255,000 in the original Schedules A and D. (T.39) He admitted, however, that he knew at the time of filing that the amount owing on this debt was approximately $210,000 rather than the $255,000 amount scheduled. (T.59)[3] A review of petition, schedules and statement of affairs indicates that Mrs. Evans signed the declaration affirming the correctness of the schedules on "3/19/03" while Mr. Evans did not affix a date to his signature, that the date shown for the signing of the petition by the Debtors is "4–24–3", but this appears to be in counsel's handwriting rather than their own, and represented that neither of the Debtors had been an officer or director of a corporation during the preceding six years. Neither did the schedules list any ownership of Mr. Evans's construction company, Evans Construction Services, Inc.

After extended consideration of the schedules, exhibits, and testimony offered at the confirmation hearing, the Court finds that the Debtors' motivation in filing a motion to convert their case to Chapter 13 was not the result of the Chapter 7 Trustee's discovery of the incorrect infor-

---

**3.** Mrs. Evans did not testify during the confir-    mation hearing.

mation in their schedules, but rather the consequence of an overly zealous effort by such Trustee to remove them from their property upon short notice and to require them on virtually no advance notice to surrender to him the vehicle used by Mrs. Evans to furnish transportation to her out-of-the-area employment, a vehicle which had been claimed as exempt to the extent of $13,500 of its $18,000 represented value, and the Debtors' concern that a precipitous liquidation of their property might result in insufficient proceeds to pay their priority tax debt.[4]

The evidence is in conflict on the issues of whether the Debtors or either of them intentionally misstated the correct loan amount owing on the residence under construction and the amounts of their 2002 income tax refunds. With respect to the misstatement of the loan balance on the residence, Mr. Evans testified that the loan documents required them to make full loan payments even though not all of the loan had been disbursed and that he had been instructed to list any debt at the largest amount he thought it might be. (T.67) He also testified, however, that he knew at the time they filed that they owed only about $210,000 on this loan rather than the $250,000 amount listed in the schedules. (T.59) In those same schedules, however, the property known as the "rental house" was valued at $138,000 rather than its actual value of approximately $100,000. If it had been the Debtors' intention to sail through Chapter 7 with little or no distribution to their creditors, however, it would seem that they would have had an incentive to understate rather than overvalue this property. The lack of care given by the Debtors to the preparation and review of their schedules before filing them with the Court is demonstrated by the fact that their answers to the questions contained in the Statement of Affairs failed to disclose anything about the construction company, Evans Construction Services, Inc., owned and operated by Mr. Evans or both of them, which was the principal cause of their financial downfall. The obvious lack of any intent to mislead, however, is demonstrated by the facts that a bankruptcy petition for the corporation was filed on April 25, 2003, the same day as their personal petition was filed, the Debtors listed all of the corporation's debts on their personal schedules, and the corporation's assets were worth considerably less than the amount of the Federal tax lien to which they were subject. Because the Debtors exercised their statutory right to convert their case to Chapter 13 before the Chapter 7 "section 341" meeting was held, we do not know how forthcoming they would have proved at such a meeting.

---

4. Mr. Evans's testimony as to why they converted the case to Chapter 13 was as follows:
   Q. When you in June converted to a Chapter 13, tell the Court why you decided to go to a Chapter 13 in this case?
   A. Well, it became evident to my wife and I that what we were most concerned about was paying all of the taxes and that at ... it was evident that Mr. Shortridge was just trying to sell everything "as is" and there was no guarantee that the taxes wouldn't follow us after that was completed. There was no guarantee that that was going to be paid. And we know that we have to pay them.

And we also knew that if everything was turned over and that everything was quick sold, that the big losers would be Highlands Union Bank, Four Leaf Financial, and the Bank of Marion, the local banks and financial institutions that have trusted us. And we were greatly upset about the possibility that these people had put their faith in us and through circumstances that weren't their fault, they would end up losing a lot of money.
(T.53–54)

Moving to the issue of the 2002 income tax refunds, both the Debtors and their counsel appear to have been under the belief that the Federal and Virginia refunds would be offset by the tax authorities to pay for withholding tax liabilities of the corporation for which Mr. Evans expected to be liable. This belief, however, does not explain the failure to list the North Carolina income tax refund applicable to Mrs. Evans's income. A review of the bankruptcy schedules indicates that they were signed by Mrs. Evans on "3/19/03". No date is noted adjacent to the signature of Mr. Evans. The 2002 income tax returns indicate they were finished by the preparer on "3/14/03" but the date they were reviewed and signed by the Debtors is unknown. What is known, however, is that the Debtors did disclose an entitlement to a tax refund in their schedules and did not attempt to claim an exemption in any such refund. It seems reasonable to find, therefore, that the Debtors understood and intended that any income tax refunds which they received would pass to the Chapter 7 bankruptcy estate. It further seems appropriate to find that the $500 amount was never intended to be taken as the exact amount of such refund but as a "marker" sufficient to make the Trustee aware of its existence. While the Court does not wish to condone anything less than a diligent and scrupulous attention by bankruptcy debtors to the correctness of their schedules and statement of affairs, it must acknowledge the reality that many such debtors approach this responsibility with a casualness which is distressing. The unfortunate consequence is that a determination of whether inaccuracies in schedules are the result of an intent to conceal and mislead or simply sloppiness is frequently not clear cut.

As noted previously in footnote no. 2, under the Debtors' amended schedules they represent that they have priority debt of $54,190, and general unsecured debt, much of which is indicated to be contingent and/or disputed, of $1,465,671. In their Chapter 13 Plan they propose to pay the Trustee $525 per month for 6 months and $1,525 per month for the next 54 months to the end that general unsecured creditors receive $40,000 over the life of the Plan. They further propose to pay to the Trustee for the purpose of satisfying their priority tax debt in full the total amount of the income tax refunds, the net proceeds of approximately $14,000 after payment of the secured debt from the sale of the rental house property, and approximately $15,000 from the sale of abandoned assets of Evans Construction Services. If the aggregate of such amounts is not enough to pay the priority taxes in full, any balance is to be satisfied from the general Plan payments to the Trustee. Finally, they propose to pay directly the monthly mortgage payments of $2,006.09 to Four Leaf Financial upon the partially constructed residence, which they will retain, and the monthly debt service payments to Bank of Marion and Highlands Union Bank until the rental house has been sold and the sales proceeds have satisfied the banks' liens. Accordingly, the Debtors propose to pay all of their secured debt aggregating $296,532.88, all of their priority debt of $54,190, and $40,000 towards their general unsecured debt. These results must be compared with the reasonably likely results of a Chapter 7 liquidation of their property.

In a Chapter 7 liquidation the bankruptcy estate would clearly get the full amount of the income tax refunds of $8,822. It likewise would receive the same net proceeds of approximately $14,000 resulting from the sale of the rental house. The timing of receipt of these payments by the Trustee is essentially the same under ei-

ther Chapter 7 or 13. An agreed order has already been entered providing that the Evans Construction assets are to be sold and the proceeds applied to payment of applicable local personal property taxes, if any, secured by a lien thereon and the balance to the IRS tax lien. This tax lien is part of the priority tax debt scheduled by the Debtors, apparently because Mr. Evans was clearly a "responsible person" for the payment of the withholding taxes in question pursuant to 26 U.S.C. § 6671(b). The key factor, therefore, is the comparison of the liquidation value of (i) the partially completed residence and (ii) the Dodge Durango as of the filing date with the total of $85, 500 which the Debtors propose to pay into the Plan over its five-year term. In both the original and amended schedules the Debtors asserted that the fair market value of this property on the filing date was $250,000. At the confirmation hearing Mr. Evans did not testify as to his opinion as to the value on the filing date of the partially completed residence, but the Debtors did offer expert appraisal testimony as to valuation from Larry John Chittester, Jr., a licensed real estate appraiser. Mr. Chittester testified that this residence and one acre of land had a current value of $78,500 (T.14), that the rental house and an assumed five acres of the Debtors' tract of over twenty acres had a fair market value of $103,500 (T.16), and the remaining land had a value of $67,500 (T.18), or an aggregate real estate value of $249,500. The "quick sale" value of this property he estimated at $194,798 (T.24). When asked on cross-examination about the value added to the property by the partially completed residence, the expert replied,

It may not add any value because it is unfinished, to be quite honest with you. But it added $76,000 because, as it

stands, that is the value of what it would be at this point in time. (T.31)

The Court accepted without objection from the Chapter 7 Trustee the credentials of Mr. Chittester as an expert witness. Based on the testimony given by Mr. Chittester, his confidence and his demeanor on the witness stand, the Court finds that his opinion as to the valuation of the partially completed residence is entitled to considerably more weight than the valuation listed by the Debtors in their schedules. Under this expert testimony the partially completed residence is worth considerably less than the mortgage debt to which it is subject. This conclusion squares with the common sense observation that the market for partially completed residences having substantial work needing to be done is limited compared to the numbers of buyers for houses which have been finished and do not entail the risk presented by significant work yet to be done. Accordingly, the Court finds that a Chapter 7 liquidation of the partially completed residence and remaining land not included with the sale of the rental house would not yield net proceeds for the benefit of unsecured creditors. Indeed, from the evidence such a liquidation, if pursued, would very possibly generate a deficiency claim from the mortgagee. Even if it were assumed that the Chapter 7 Trustee could sell the Dodge Durango for its full scheduled value of $18,000 with no associated liquidation expense, the net benefit to the bankruptcy estate after paying off the Debtors' exemption claims against this vehicle totaling $13,500 would be only $4,500. It is clear that the proposed Chapter 13 Plan will provide a considerably better distribution to general creditors than would a Chapter 7 liquidation of the estate and the Court so finds. The Court has also determined that the Debtors' filing fees for this case have been paid.

Mrs. Evans continues to be employed as a nurse in Morganton, North Carolina. She earns over $50,000 a year in that job. The failure of Evans Construction Services, Inc. of course eliminated Mr. Evans's income from that business. Since the date of the petition filing, Mr. Evans has obtained employment with the school system as a substitute bus driver. He also does small construction projects and is able to earn a "take-home" income of $2,000 per month to contribute to the household budget. On the basis of this income earned by the Debtors, the Court finds that they will be able to make the payments required under the Plan and will be able to fulfill its terms.

The Court further adopts the factual statements made in the "Case History" portion of this Memorandum Decision.

## CONCLUSIONS OF LAW

This Court has jurisdiction of this proceeding by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984. The matters before the Court constitute "core" bankruptcy proceedings pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (L).

▇▇▇ Unlike a debtor who originally files under Chapter 13 of the Bankruptcy Code, who has an unqualified right to obtain a dismissal of his or her case so long as it has not been converted to a proceeding under another chapter of the Code, 11 U.S.C. § 1307(b), a debtor who files under Chapter 7 has no right to obtain a dismissal of the case if the results are not what he anticipated. 11 U.S.C. § 707(a). Even though the Chapter 7 debtor does not have a right to obtain a dismissal of the case, he or she does have a largely unqualified right to convert the case from Chapter 7 to Chapter 13 by virtue of section 706(a) of the Code, which provides:

> The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.

For obvious reasons, however, the debtor cannot convert a case to a chapter of the Code under which the debtor would not have been eligible to file initially. 11 U.S.C. § 706(d). Under 11 U.S.C. § 109(e), only individuals or married couples who owe on the petition date less than $290,525 of "noncontingent, liquidated, unsecured debts" and less than $871,550 of "noncontingent, liquidated, secured debts" are eligible to proceed under Chapter 13 of the Bankruptcy Code. There is no express statutory requirement of "good faith" in exercising the right of conversion similar to the requirement of establishing good faith to obtain confirmation of a proposed Chapter 13 Plan. 11 U.S.C. § 1325(a)(3). The debtor's exercise of this right of conversion terminates "the service of any trustee . . . that is serving in the case before such conversion." 11 U.S.C. § 348(c).

Under the statutory provisions enacted by Congress bankruptcy trustees are compensated based on the value of the assets they administer. A Chapter 7 Trustee's compensation is limited to a percentage of "all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims." 11 U.S.C. § 326(a). Chief Judge Krumm of this Court in a recent decision[5] held that by

---

**5.** *In re Meadows,* 2003 Bankr.LEXIS 21, 50 C.B.C.2d 58, 2003 WL 477428 (Bankr. W.D.Va.2003).

virtue of this provision he was without power to award compensation to a Chapter 7 Trustee in a case which had been properly administered but in which no creditor had filed a proof of claim, resulting in the Trustee making distribution of the bankruptcy estate solely to the debtor, even though the Trustee had earned his compensation and denial of compensation seemed both unfair to the Trustee and contrary to sound bankruptcy policy. The Code expressly deals with the situation where more than one trustee serves in a case in section 326(c), which provides that in such a situation "the aggregate compensation of such persons for such service may not exceed the maximum compensation prescribed for a single trustee by subsection (a) [Chapter 7 or 11] or (b) [Chapter 12 or 13] of this section, as the case may be." This subsection, however, does not expressly instruct, or arguably even contemplate, how compensation is to paid when trustees under multiple chapters of the Code serve, and certainly does not determine how compensation is to be divided among trustees when such is appropriate.

■ The Code directs that the Court "shall confirm" a debtor's proposed Chapter 13 Plan if several requirements have been met. As relevant to the case before the Court, such requirements include findings that "the plan has been proposed in good faith and not by any means forbidden by law", 11 U.S.C. § 1325(a)(3), and that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under Chapter 7 of this title on such date", 11 U.S.C. § 1325(a)(4). This latter requirement is sometimes known as the "liquidation test" and assures that the Chapter

13 debtor must provide to his general creditors at least as good a "deal" as they would receive under Chapter 7. Bankruptcy Rule 3015(f) provides that if no objection to confirmation is filed, "the court may determine that the plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues." This Court and many others have held that the proponent of a Chapter 13 plan has the burden of proving by a preponderance of the evidence that the noted statutory requirements for confirmation have been met. *In re Brown*, 244 B.R. 603 (Bankr.W.D.Va.2000); B. Russell, Bankruptcy Evidence Manual § 301.80 at page 671 (West 2003 ed.). A bankruptcy court has an independent duty, irrespective of the lack of any objection to confirmation by a creditor or other party in interest, to satisfy itself that a proposed chapter 13 plan does meet the confirmation requirements set forth in the statute. *United States v. Easley*, 216 B.R. 543, 544 n. 1 (W.D.Va.1997); *In re Bowles*, 48 B.R. 502, 505 (Bankr.E.D.Va.1985).

In considering the issues of the nature of the Debtors' right to convert their case to Chapter 13 and possible re-conversion of the case back to Chapter 7, the Court has found most analogous the decision of the Fourth Circuit Court of Appeals in the case of *In re Finney*, 992 F.2d 43 (4th Cir.1993). In that case the Chapter 7 debtor was uncooperative with the Trustee and made certain undisclosed post-petition transfers of real property which the bankruptcy court found to have been made with the intent to hinder, delay or defraud his creditors. After the trustee successfully recovered these transfers, the debtor moved to dismiss his case. The bankruptcy court denied the motion to dismiss and sustained a creditor's complaint objecting to Finney's discharge on the basis of the bad-faith transfers. At this point the debtor exercised his right under Bankrupt-

cy Code § 706(a) to convert his case to Chapter 11. The bankruptcy court denied the motion to convert "on equitable grounds" and "for good case shown". 992 F.2d at 44. On appeal the Fourth Circuit Court stated as follows:

Adopting the majority approach, the district court concluded that subjective bad faith, standing alone, is insufficient to abrogate the unqualified § 706(a) right of conversion. [*Finney v. Smith,*] 141 B.R. [94]at 98 [(E.D.Va.1992)]. We express no opinion on what circumstances, if any, would justify invocation of § 105(a) to deny a § 706(a) motion outright. We agree with the district court, however, that Finney's misconduct during the Chapter 7 proceedings was insufficiently "egregious" to warrant such extreme action. 141 B.R. at 98. (distinguishing [*In re*] *Calder,* 93 B.R. [739]at 740 [(Bankr.D.Utah 1988)]).

After recognizing Finney's right to convert his case from Chapter 7, however, the district court observed that he had *no subsequent right to remain* in Chapter 11. To the contrary, § 1112(b) allows a bankruptcy court to dismiss a Chapter 11 petition upon finding that Chapter 11 status was sought in subjective bad faith and that it is objectively futile. *Carolin,* 886 F.2d at 700–701. The court correctly held the *Carolin* standard to apply whether the remedy sought is dismissal, as in that case, or reconversion to Chapter 7, as here. 141 B.R. at 99. A bankruptcy court may act under § 1112(b) on the motion of a party in interest or *sua sponte* as "necessary or appropriate" under § 105(a). *Pleasant Pointe Apartments, Ltd. v. Kentucky Housing Corp.,* 139 B.R. 828, 831 (W.D.Ky.1992); 5 *Collier on Bankruptcy* § 1112.03[4] (1992).

Reading these statutes *in pari materia,* the district court reasoned that the bankruptcy court could deny Finney's

§ 706(a) motion upon finding a *sua sponte* § 1112(b) reconversion to be warranted under § 105(a) and *Carolin.* With respect to whether § 105(a) was properly invoked here, the district court held that since a conversion creates no break in a bankruptcy case, Finney's prior misconduct was "relevant to the [bankruptcy] court's *sua sponte* reconversion. 141 B.R. at 100.

We agree. Finney's recalcitrance and fraud during the Chapter 7 proceedings, J.A. 84, and his resort to the § 706(a) motion only after his discharge was denied, are reasonably read as constituting abuse of process sufficient to trigger § 105(a). *See Carolin,* 886 F.2d at 702 ("[t]he subjective bad faith inquiry is designed to ... determine whether the petitioner's real motivation is "to abuse the reorganization process' ") (citations omitted). While Finney's actions do not justify an equitable override of his "one-time absolute right" to convert the case under § 706(a), they do justify the bankruptcy court's *sua sponte* consideration of whether immediate reconversion under § 1112(b) is appropriate.

992 F.2d at 45. Because under the Fourth Circuit's prior ruling in the case of *Carolin Corp. v. Miller,* 886 F.2d 693, 700–01 (4th Cir.1989), findings of both subjective bad faith and objective futility were required to dismiss a Chapter 11 case prior to a confirmation hearing, the Court remanded the *Finney* case back to the bankruptcy court to determine whether the bankruptcy case under Chapter 11 would be objectively futile. The bankruptcy court's power to convert a case back from Chapter 11 to Chapter 7 for "cause" under 11 U.S.C. § 1112(b) is very comparable to its similar power to convert a case back from Chapter 13 to Chapter 7 for "cause" pursuant to 11 U.S.C. § 1307(c). Accordingly, applying the principles of that holding to the pres-

ent case, even if the Chapter 7 Trustee's characterization of the Debtors' conduct were accepted, appears to require that this Court determine whether "cause" exists to convert the case back to Chapter 7 under section 1307.

In determining whether a bankruptcy debtor is proposing a Chapter 13 plan in "good faith", the Court of Appeals for the Fourth Circuit has held that the bankruptcy court should consider all relevant circumstances, expressly including (1) the percentage of proposed repayment, (2) the financial situation of the debtor, (3) the time period for the plan, (4) employment history and prospects of the debtor, (5) the nature and amount of unsecured claims, (6) debtor's honesty in representing facts, (7) past bankruptcy filings by the debtor, and any "unusual or exceptional" problems of the debtor. *Deans v. O'Donnell*, 692 F.2d 968 (4th Cir.1982). In the subsequent case of *Neufeld v. Freeman*, 794 F.2d 149 (4th Cir.1986) the Fourth Circuit held that such circumstances to be considered include the debtor's pre-petition conduct. This Court has not found any Fourth Circuit decision specifically dealing with a situation where the debtors' failure in a Chapter 7 to disclose property or alleged concealment of equity in assets was revealed by an aggressive Chapter 7 Trustee, which was followed by their conversion of the case to Chapter 13. It is clear that such conduct should be considered; just how it should be weighed in the balance with other relevant circumstances is not clear at all.

With these general principles in mind, the Court will now endeavor to answer the questions earlier presented.

■ 1. Did the Debtors have a right to convert their case from Chapter 7 to Chapter 13?

According to the information contained in the original bankruptcy schedules, the Debtors were not eligible to convert their case to Chapter 13 because the amount of their non-contingent, undisputed and liquidated unsecured debt exceeded the permitted maximum amount allowed for a Chapter 13 debtor by 11 U.S.C. § 109(e). *See In re Grew*, 278 B.R. 619, 621–22 (Bankr.M.D.Fla.2002). Such schedules were not amended prior to the date the Debtors filed their motion to convert or the date the Court's conversion order was entered. In retrospect the Court erred in converting the case to Chapter 13 because such conversion was contrary to 11 U.S.C. § 706(d). This issue was not raised, however, by any party or noticed by the Court prior to the Debtors' amendment of their schedules. Having accepted that such amendment was made in good faith and determined that under the correct facts as represented in the amended schedules the Debtors were eligible to proceed under Chapter 13, the Court concludes that the Debtors did have a right to convert their case pursuant to 11 U.S.C. § 706(a). Moreover, under the teaching of *In re Finney* it is clear that the factual circumstances surrounding the exercise of the right to convert are not of a nature as to call into question the Debtors' statutory privilege to do so.

■ 2. Does the former Chapter 7 Trustee in a case which has been converted to Chapter 13 by the Debtors pursuant to 11 U.S.C. § 706(a) have standing to object to such conversion or prosecute an objection to confirmation of the Debtors' proposed Chapter 13 Plan and a motion to convert the case back to Chapter 7?

Bankruptcy courts have struggled with the policy implications of denying standing to Chapter 7 Trustees to be heard in cases converted to Chapter 13 when such conversion seems to be motivated by a desire to avoid impending liquidation of debtors' property which has come to light as a

result of the Trustees' conscientious and vigorous exercise of their duties. *Compare In re Verdi*, 241 B.R. 851, 858 (Bankr. E.D.Pa.1999) (former Ch. 7 Trustee is "party in interest" withstanding both as potential administrative claimant and as former trustee) *with In re Kleber*, 81 B.R. 726, 727 (former Ch. 7 Trustee has no standing to file motion to reconvert). The latter holding is the one cited approvingly by Collier. 6 Collier on Bankruptcy § 706.06 at p. 706–12 (15th ed. rev.) While the court acknowledges its doubt as to the wisdom of a rule which enables Chapter 7 debtors to escape, at least partially and without penalty, the consequences of their own carelessness or even intentional misconduct in the preparation of their bankruptcy schedules, it nevertheless recognizes that such policy concerns are for Congress to make. When Congress has provided language which by its terms is applicable to a particular situation, and the result of such application does not yield an absurd result or one clearly contrary to Congressional intent, such language should be applied. *Lamie v. United States Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004); *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000); *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). Therefore, the Court will align itself with those decisions which have precluded a former Chapter 7 Trustee from later participation in the case in such capacity once it has been converted to Chapter 13.

■ 3. Does the Chapter 7 Trustee who has made no distributions to creditors or to a successor Trustee have any claim for the value of his services rendered either prior to or following the Debtors' exercise of their right pursuant to 11 U.S.C. § 706(a) to convert their case to Chapter 13?

As has been noted previously in this decision in the general discussion of applicable legal principles, Chief Judge Krumm of this Court has dealt with a situation where he felt obliged under the wording of the applicable statute to deny compensation to a Chapter 7 Trustee although the work had been done and sound bankruptcy policy would seem to point in favor of awarding compensation. *In re Meadows*, 2003 WL 477428, *3, 2003 Bankr.LEXIS 21, *10, 50 C.B.C.2d at 61. That opinion cited many of the decisions which are applicable to the issue now before the Court when the case has been converted to Chapter 13 before the Chapter 7 Trustee has been able to gain dominion over estate property which he has turned over to the Chapter 13 Trustee. Some of those decisions have allowed compensation on equitable or policy grounds pursuant to 11 U.S.C. § 105, while others have denied it as the necessary result of applying the statutory language. Compare *In re Hages*, 252 B.R. 789, 794 (Bankr.N.D. Cal. 2000); *In re Rodriguez*, 240 B.R. 912, 915 (Bankr.D.Colo.1999); *In re Moore*, 235 B.R. 414, 416–17 (Bankr.W.D.Ky.1999); *In re Colburn*, 231 B.R. 778, 783 (Bankr.D.Or. 1999); and *In re Berry*, 166 B.R. 932, 935 (Bankr.D.Or.1994) (allowing compensation) with *In re Murphy*, 272 B.R. 483, 485–86 (Bankr.D.Colo.2002); *In re Fischer*, 210 B.R. 467, 469 (Bankr.D.Minn.1997); and *In re Woodworth*, 70 B.R. 361, 363 (Bankr. N.D.N.Y.1987) (denying compensation). In this case, although the Chapter 7 Trustee was extraordinarily prompt and vigorous in the discharge of his responsibilities, the Debtors converted their case to Chapter 13 before he actually had in hand any of the assets he was pursuing. The Supreme Court has just within the last month in a bankruptcy decision again made clear that the responsibility of this

Court is to apply the statutory language provided by Congress rather than construing what Congress has enacted in such a way as to reach a result which seems more appropriate to the Court. *Lamie v. United States Trustee*, 540 U.S. at 542, 124 S.Ct. 1023 (2004). In the case under consideration it is clear that the Chapter 7 Trustee neither distributed any money or other property to creditors nor to the Chapter 13 Trustee. The Court concludes in harmony with the *Meadows* and *Murphy* decisions, that however laudable or desirable it might be on fairness and good bankruptcy policy grounds to award compensation to Mr. Shortridge for the work he did in this case before its conversion, to do so would be inconsistent with the provisions of 11 U.S.C. § 326(a) because it limits compensation to a Chapter 7 Trustee to a percentage of "moneys" actually turned over by him or her to parties in interest, other than the debtor, and here the Chapter 7 Trustee did not disburse or turn over property of any kind to anyone.

The Court has considered whether the Chapter 7 Trustee might be deemed to have been in constructive possession for compensation purposes of the income tax refunds which he demanded that the Debtors turn over to him prior to case conversion, but the evidence before the Court on this point, which consists of the testimony of Mr. Evans, is that at least two out of the three refunds were received after the case had been converted to Chapter 13 and he wasn't sure about the North Carolina refund, which might have been received before the case was converted. (T.68) For the Court to find on such evidence that such refund was received prior to the conversion would involve guesswork on its part. Because one seeking an allowance of an administrative expense against a bankruptcy estate has the burden of proving his or her entitlement to same, *In re Merry–Go–Round Enterprises, Inc.*, 180 F.3d

149, 157 (4th Cir.1999), the Court cannot assume what has not been proven. Accordingly, the Court is not presented in the present case with whether compensation might be allowable to a Chapter 7 Trustee where the Trustee's failure to gain possession of estate property is attributable solely to a debtor's wrongful refusal to turn over property which has not been claimed as exempt and to which the Trustee was unequivocally entitled to obtain.

■ 4. Does the former Chapter 7 Trustee have any claim against the Chapter 13 estate for any expenses incurred by him while serving as Chapter 7 Trustee or after the conversion to Chapter 13?

The strictures of 11 U.S.C. § 326(a) are only applicable to compensation, not reimbursement of expenses. Accordingly, the Court will award Mr. Shortridge an administrative claim for his pre-conversion out-of-pocket expenses of $71.84. Because he was divested of his office once the case was converted to Chapter 13, his expenses thereafter were incurred in his capacity as an administrative claimant against the estate and are not compensable.

■ 5. If the Trustee is entitled to an allowance of either compensation or reimbursement of expenses against the bankruptcy estate, does this accord him standing as a party in interest to object to confirmation of the Chapter 13 Plan and move to reconvert the case to Chapter 7?

A "party in interest" has standing both to move to convert a Chapter 13 case to Chapter 7 and to object to confirmation of the proposed Chapter 13 Plan. 11 U.S.C. §§ 1307(c), 1324. The term "party in interest" is not defined in the Code, but it has been held that a former Chapter 7 Trustee as an administrative claimant against the estate gave him standing as such a "party in interest". *In re Barnes*, 275 B.R. 889 (Bankr.E.D.Cal.2002). Ac-

cordingly, Mr. Shortridge in his capacity as an administrative claimant against the estate, but not by reason of his status as the former Chapter 7 Trustee, has standing to move to convert the case and to object to confirmation.

■ 6. Even if the Chapter 7 Trustee lacks standing, may the Court consider the issues raised by such Trustee in determining whether the proposed Chapter 13 Plan complies with the confirmation requirements of 11 U.S.C. § 1325(a)?

Because the pleadings filed by Mr. Shortridge assert standing by reason of his capacity as the former Chapter 7 Trustee rather than as an administrative claimant against the bankruptcy estate, the Court will proceed to address this question. Bankruptcy Rule 3015(f) provides that a bankruptcy court, in the absence of objection to confirmation, "may determine that the plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues." Clearly this language permits a bankruptcy court to require evidence on such issues in its discretion. In this case the Court chooses to do so even if had determined that Mr. Shortridge had no status whatsoever to object to confirmation or to move that the case be re-converted to Chapter 7. Furthermore, the Court has its own responsibility to satisfy itself that the confirmation standards of section 1325(a) have been met. *United States v. Easley,* 216 B.R. at 544 n. 1; *In re Bowles,* 48 B.R. at 505.

■ 7. Have the Debtors satisfied their burden of proving by a preponderance of the evidence that their proposed Chapter 13 Plan fulfills the requirements of 11 U.S.C. § 1325(a)?

The Court concludes that the Debtors' proposed Chapter 13 Plan complies with the provisions of Chapter 13 and other applicable provisions of the Bankruptcy Code, that all required filing fees have been paid, that the value, as of the effective date of such Plan, of property to be distributed under the Plan to unsecured creditors exceeds the amount which would be distributed to them if the bankruptcy estate were liquidated under Chapter 7, that the secured creditors will retain their liens and receive the full value of the allowed amounts of such claims, and that the Debtors will be able to make the required payments and otherwise comply with the Plan. 11 U.S.C. § 1325(a)(1), (2), (4), (5) and (6). The key question is whether the Debtors have proposed their Plan "in good faith and not by any means forbidden by law". In deciding this question the Court has sought to consider all relevant circumstances as mandated by *Deans v. O'Donnell* and *Neufeld v. Freeman.* The main point calling in question the Debtors' good faith is the Court's uncertainty as to whether the inaccurate representation of the loan payoff upon the mortgage debt against the partially completed residence was simply an innocent mistake or was the result of an affirmative intent on the Debtors' part to take an aggressive position in their bankruptcy filing for which they might offer some explanation if challenged, but which might pass unchallenged if the Trustee were less thorough and careful than Mr. Shortridge proved to be. In more common terms, did they plan to "play dumb". It might be reasonably observed on this point that at no point did Mr. Evans testify that he inquired of his bankruptcy counsel as to how to list in the schedules a loan which had only been partially advanced. On the other side of the ledger, the Court is satisfied that the Chapter 13 Plan itself, as possibly distinguished from the conduct which preceded it, has been proposed in good faith and with an actual intent on the Debtors' part to perform it, even if that intent is motivat-

ed in significant part to avoid the possibility of Mr. Shortridge's aggressive handling of a Chapter 7 liquidation.[6] The Court gives the greatest weight to the interests of the Debtors' creditors. The Court believes that their interest will fare significantly better under the terms of the Plan than they would be served by a Chapter 7 liquidation. Accordingly, to the extent that the issue of "good faith" is a combined one of fact and law, the Court concludes that such confirmation test is satisfied in this case.

■ 8. Does cause exist for the conversion of the case back to Chapter 7 pursuant to 11 U.S.C. § 1307(a)?

Having determined that the Debtors have proposed a Chapter 13 Plan which satisfies the confirmation requirements of 11 U.S.C. § 1325(a), including that of good faith, it would be inconsistent to conclude that good cause exists to convert the case back to Chapter 7. *See In re Finney*, 992 F.2d at 45 (holding that bad faith alone was insufficient cause to convert a case back to Chapter 7 from Chapter 11 and that the bankruptcy court needed to consider whether a Chapter 11 proceeding would be objectively futile). Furthermore, the burden to establish lack of good faith on the part of the Debtors to support a motion to dismiss or convert is upon the party making such motion, who has the burden of proof thereon. *In re Love*, 957 F.2d 1350, 1355–56 (7th Cir.1992). Accordingly, the Court will deny the motion to convert the case back to Chapter 7.

The decisions made above are incorporated in a separate order being entered contemporaneously with the signing of this opinion.

---

6. "[T]here is nothing inherently wrong, dishonest or improper about a debtor converting from a liquidation proceeding to a Chapter 13 proceeding in order to save his home and secure assets not otherwise available." *In re Thacker,* 6 B.R. 861, 865 (Bankr.W.D.Va. 1980) (Pearson, J.).